**Bianca SMITH–GILBARD, Appellant,**

**v.**

**Joanne PERRY, Appellee.**

**No. 05–09–01020–CV.**

Court of Appeals of Texas,
Dallas.

Feb. 7, 2011.

Brent E. Dyer, Patrick Dennis Souter, Looper, Reed & McGraw, P.C., Frieda A. Clark, Sourt Law Firm, P.C., Dallas, TX, for Appellant.

Jacob D. Thomas, The Law Offices of Jacob D. Thomas, Don T. Cates, Scott Gray, Forney, TX, for Appellant.

Before Justices MOSELEY, O'NEILL, and MYERS.

## OPINION

Opinion By Justice MYERS.

Appellant, Bianca Smith–Gilbard, appeals from an adverse judgment in a lawsuit that sought reformation of a warranty deed. In two issues, she argues the evidence is legally and factually insufficient to support the trial court's finding of mutual mistake and its conclusion that appellee, Joanne Perry, was entitled to the equitable remedy of reformation. We reverse and render judgment in favor of Smith–Gilbard.

### BACKGROUND AND PROCEDURAL HISTORY

This case is based on the sale of a parcel of real property by Perry to Smith–Gilbard. In 2001, Smith–Gilbard and her husband, Dr. Charles Turner Lewis, III, were in the market for an undeveloped piece of real estate for the purpose of building a pediatric health care facility in Kaufman County. Smith–Gilbard and Dr. Lewis were informed that Ray Raymond, a long time Kaufman resident, might be able to assist them in locating a parcel of land suitable for their purpose. Dr. Lewis asked for Raymond's help in locating a parcel of land near the hospital. Raymond, who was working as the Executive Director for the Kaufman Economical Development Corporation at the time, agreed to assist Dr. Lewis.

In 2001, Perry owned a piece of property along West Grove Street in Kaufman, Texas. While looking for some land that would suit Dr. Lewis's purpose, Raymond considered Perry's lot along West Grove Street. Raymond approached Perry and asked, according to Perry's testimony, "Would you be interested in selling the vacant lot on the other side of the fence next to your property. . . ." Perry replied that she might be interested in selling the lot west of the fence line. Raymond testified that he informed Dr. Lewis that Perry was interested in selling her land west of the fence line. Raymond did not recall having "much conversation" with Dr. Lewis after telling him that Perry would sell the property. Dr. Lewis testified that Raymond never spoke to him about a fence line on the property, and that although he spoke to Perry about the selling price, he and his wife hired a realtor, Sam Musso, "to handle the rest of the transaction." Smith–Gilbard denied there was any agreement regarding the portion of the lot east of the fence line.

Perry subsequently entered into an "Unimproved Property Contract" with Smith–Gilbard. At the time of the sale, Perry provided Smith–Gilbard with a warranty deed dated November 15, 1965 (the 1965

warranty deed). Perry told Smith–Gilbard that she did not see any reason to incur the additional expense of having a new survey made because there had been no changes to the property described in the 1965 warranty deed since Perry purchased it. The tract contained in the 1965 warranty deed was specifically referred to as a parcel of land "situated in the County of Kaufman, State of Texas, a part of the C.A. Lovejoy Survey, Abstract Number 303" (the C.A. Lovejoy Survey). The contract for sale signed by the parties on December 10, 2001 likewise described the property as "Lot 125, Block C.A. Lovejoy Addition," City of Kaufman, Kaufman County, Texas, and indicated that it measured "113 × 200″ [feet], adjacent to 1003 W. Grove." The property measurements in the contract were provided by Perry's son, Johnny, who was not a trained surveyor. Johnny did not testify at the trial of this case, and Perry testified that she did not know how her son ascertained the "113 × 200" foot measurement of the property.

The property was formally conveyed to Smith–Gilbard in a deed of trust dated March 8, 2002 (the 2002 warranty deed). The conveyed property was described as the parcel of land situated in the "County of Kaufman, State of Texas, a part of the C.A. Lovejoy Survey, Abstract Number 303." The property was then described by metes and bounds in terms that were identical to the 1965 warranty deed that Perry had provided in lieu of a survey. The metes and bounds descriptions of the property, however, included an additional 1,881 square feet of the lot that extended east beyond the fence line. At trial, it was undisputed that the "Lot 125" of the "C.A. Lovejoy Addition" referred to in the contract between the parties was the same piece of property described in both the 1965 and 2002 warranty deeds as part of the "C.A. Lovejoy Survey." Perry did not tell Smith–Gilbard she did not intend to convey all of the property described in both the 1965 warranty and 2002 deeds as the "C.A. Lovejoy Survey."

Part of the process of building the pediatric health clinic[1] involved submitting building plans to the local zoning and commission boards. The discussions and planning regarding the clinic were based on the metes and bounds description in the 2002 warranty deed that, in turn, incorporated the metes and bounds description of the 1965 deed. During this process, Smith–Gilbard learned, for the first time, that a third of the property located on a service road at the front of the property was subject to a highway frontage easement. Smith–Gilbard was reimbursed under her title policy for the loss of the property subject to the easement, and her dealings with the title company did not involve the property line that is the subject of this litigation. Perry attended one of the zoning meetings concerning the clinic and was aware of the plans submitted by Smith–Gilbard, but did not speak to her or Dr. Lewis regarding the property line.

Perry sued Smith–Gilbard in September 2004, seeking reformation of the deed based on an alleged mutual mistake of the parties. The petition acknowledged that Perry executed and delivered the 2002 warranty deed to Smith–Perry. Perry argued, however, that it was the specific intent of the parties to sell the property described in the deed "up to but not including" the portion of the lot that extended east beyond the fence line. Specifically, she alleged that

1. The clinic is now the primary Medicaid pediatric provider for Kaufman County and the surrounding area. Dr. Lewis is a pediatrician and Smith–Gilbard owns the clinic land and building.

[b]y mistake of the parties, principally through the title company assisting in the closing, the premises were erroneously described therein as the adjacent tract (instead of the property to the fence line). As a result of said erroneous property description in the deed, an additional parcel of land adjacent to the property actually intended to be conveyed was mistakenly included therein. Perry also alleged that she made repeated requests to Smith–Gilbard to reform the deed, to no avail. Smith–Gilbard's answer denied all of the allegations and raised the affirmative defenses of estoppel, laches, and that Perry had no cause of action under Texas law. Following a bench trial, the trial court concluded Perry was entitled to reformation of the warranty deed because there was an agreement among the parties that was not reflected in the deed, and that the deed should thus be reformed to describe the eastern boundary of the property sold by Perry to Smith–Gilbard as ending at "the existing fence line." This appeal followed.

### DISCUSSION

In her first issue, appellant argues we should reverse the trial court's judgment because there is no evidence to support a cause of action for mutual mistake.

■ We review findings of fact entered in a bench trial for legal and factual sufficiency of the evidence by the same standards used to review jury findings. *Girdner v. Rose*, 213 S.W.3d 438, 445 (Tex. App.-Eastland 2006, no pet.); *Dunn v. Dunn*, 177 S.W.3d 393, 396 (Tex.App.-Houston [1st Dist.] 2005, pet. denied). In a legal sufficiency review, we view the evidence in a light favorable to the finding, crediting favorable evidence if a reasonable fact finder could, and disregarding contrary evidence unless a reasonable fact finder could not. *City of Keller v. Wilson*,

168 S.W.3d 802, 827 (Tex.2005). When reviewing the factual sufficiency of evidence, we examine all the evidence and set aside a finding only if it is so contrary to the evidence as to be clearly wrong and unjust. *Cameron v. Cameron*, 158 S.W.3d 680, 683 (Tex.App.-Dallas 2005, pet. denied). The trial court's conclusions of law are reviewed de novo. *Smith v. Smith*, 22 S.W.3d 140, 143–44 (Tex.App.-Houston [14th Dist.], no pet.).

■ The only cause of action alleged by Perry was mutual mistake. A mutual mistake of fact occurs when the parties to an agreement have a common intention, but the written contract does not reflect the intention of the parties due to a mutual mistake. *Johnson v. Conner*, 260 S.W.3d 575, 581 (Tex.App.-Tyler 2008, no pet.); *N. Natural Gas v. Chisos Joint Venture I*, 142 S.W.3d 447, 456 (Tex.App.-El Paso 2004, no pet.). When a party alleges that, by reason of mutual mistake, an agreement does not express the real intentions of the parties, extrinsic evidence is admissible to show the real agreement. *Johnson*, 260 S.W.3d at 581.

■ To prove a mutual mistake, the evidence must show that both parties were acting under the same misunderstanding of the same material fact. *Walden v. Affiliated Computer Servs., Inc.*, 97 S.W.3d 303, 326 (Tex.App.-Houston [14th Dist.] 2003, pet. denied); *see also City of The Colony v. N. Tex. Mun. Water Dist.*, 272 S.W.3d 699, 735 (Tex.App.-Fort Worth 2008, pet. filed); *Wallerstein v. Spirt*, 8 S.W.3d 774, 781 (Tex.App.-Austin 1999, no pet.). A mutual mistake regarding a material fact is grounds for avoiding a contract, but the mistake must be mutual rather than unilateral. *Holley v. Grigg*, 65 S.W.3d 289, 295 (Tex.App.-Eastland 2001, no pet.). "A mistake by only one party to an agreement, not known to or induced by acts of the other party[,] will not constitute

grounds for relief." *Johnson v. Snell,* 504 S.W.2d 397, 399 (Tex.1974). A unilateral mistake does not provide grounds for relief even though it results in inequity to one of the parties. *Holley,* 65 S.W.3d at 295.

■ In *Johnson v. Conner,* for example, a case that is cited by Smith–Gilbard, the court concluded there was no probative summary judgment evidence establishing that the parties had the same misunderstanding about whether a mineral estate was to be conveyed in a deed, and that "[f]or a mutual mistake to exist, there must be the same mistaken belief or assumption in the minds of the grantors and grantees named in the deed." *Johnson,* 260 S.W.3d at 582. "Two separate unilateral mistakes in the minds of the grantors and grantees do not create a factual issue for a mutual mistake cause of action." *Id.*

■ When seeking relief from a mutual mistake, the party seeking reformation must also prove what the true agreement was, but its case is not made by proof that there was an agreement which is at variance with the writing. *Johnson,* 260 S.W.3d at 581; *Estes v. Republic Nat'l Bank of Dallas,* 462 S.W.2d 273, 275 (Tex. 1970). It must go further and establish that the terms or provisions of the writing that differ from the true agreement made were placed in the instrument by mutual mistake. *Johnson,* 260 S.W.3d at 581. The Texas Supreme Court reminds us that "[t]he doctrine of mutual mistake must not routinely be available to avoid the result of an unhappy bargain." *Williams v. Glash,* 789 S.W.2d 261, 265 (Tex.1990). "Parties should be able to rely on the finality of freely bargained agreements." *City of The Colony,* 272 S.W.3d at 735 (citing *Glash,* 789 S.W.2d at 265).

■ In this case, the evidence at trial indicates that the parties intended to rely on the metes and bounds description in the 1965 warranty deed that was incorporated into the 2002 warranty deed to accurately describe the property. Smith–Gilbard testified that she relied on the metes and bounds description of the property that was found in the 1965 and 2002 warranty deeds, and Perry provided Smith–Gilbard the 1965 warranty deed as a description of the property in lieu of preparing a new survey. According to Smith–Gilbard, Perry told her that she had owned "the property for a very long time, nothing had changed, nothing was different on it," so there was no reason to incur the additional cost of a new survey. Perry testified that she provided the 1965 warranty deed because "[Smith–Gilbard] wanted a description of the property." There is no indication in the record that Perry ever told Smith–Gilbard that she did not intend to convey all of the property described in the deeds, or that she was only interested in selling a parcel measuring "113 × 200" feet. Moreover, it is well-known that specific descriptions by metes and bounds prevail over more general descriptions. *See Southern Pine Lumber Co. v. Hart,* 161 Tex. 357, 340 S.W.2d 775, 780 (Tex.1960); *Hurr v. Hildebrand,* 388 S.W.2d 284, 288 (Tex.Civ.App.-Houston 1965, writ ref'd n.r.e.); *Lawyers Title Ins. Co. v. McKee,* 354 S.W.2d 401, 405 (Tex. Civ.App.-Fort Worth 1962, no writ); *see also Gibson v. Watson,* 315 S.W.2d 48, 57 (Tex.Civ.App.-Texarkana 1958, writ ref'd n.r.e.).

Smith–Gilbard testified that she had paid taxes on the property since the sale, and those taxes were assessed based on the property as described in the 2002 warranty deed. According to her testimony, Smith–Gilbard had no idea there was any question regarding her ownership of the property until, over a year after the closing, a construction crew started removing parts of a fence while cleaning up the property. It was at that point, according

to Smith–Gilbard, she first learned that Perry believed she still owned a portion of the property east of the fence line. Smith–Gilbard also testified that she did not have any conversations with anyone to the effect that she was mistaken concerning the property she had purchased. When asked at trial whether she was aware of any evidence that Smith–Gilbard was mistaken regarding the property that she acquired, Perry insisted that she "didn't deal with" Smith–Gilbard, and that she "dealt with" Smith–Gilbard's husband, Dr. Lewis. Smith–Gilbard's attorney repeated the question, and Perry responded, "I am not aware of it, no." [2] As we have already noted, a unilateral mistake in an agreement does not constitute grounds for reformation. *Johnson,* 504 S.W.2d at 399; *Holley,* 65 S.W.3d at 295.

We also note that the cases cited by Perry do not support her argument that the evidence in this case establishes the existence of a mutual mistake. For example, in *Thalman v. Martin,* 635 S.W.2d 411 (Tex.1982), the court reformed a deed to convey a mineral interest that was left out of the property description contained in the deed, but, unlike *Thalman,* the dispute in this case is not the result of an omitted term or reservation in a deed that resulted in the transfer of less property than the parties intended. *See id.* at 414–15. In *National Resort Communities, Inc. v. Cain,* 526 S.W.2d 510 (Tex.1975), the issue of reformation arose because there was no precise land description in the deed, which is also not the case here. *See id.* at 514. And in *Capitol Rod & Gun Club v. Lower Colorado River Authority,* 622 S.W.2d 887 (Tex.Civ.App.-Austin 1981, writ ref'd

n.r.e.), the court noted that neither the subjective intent of the parties nor their oral discussions were controlling on a transaction that was subsequently reduced to an unambiguous writing such as a contract or deed, which is what occurred in this case. *See id.* at 894.

Perry calls our attention to conversations that allegedly occurred between her and Dr. Lewis as well as Raymond regarding her intention to sell only the property west of the fence line, and argues that Lewis and Raymond as well as Sam Musso, the real estate broker who prepared the contract of sale, acted as Smith–Gilbard's "authorized agents in regard to the transaction that is the subject of this dispute."

The trial court in this case did not make any findings regarding an agency relationship between Smith–Gilbard and her husband, Dr. Lewis, or that Musso was an authorized agent of Smith–Gilbard as to the disputed real estate transaction. Nor was there a finding that Raymond acted as Smith–Gilbard's agent in the real estate transaction. Our rules of civil procedure provide that no findings or conclusions shall be deemed or presumed by any failure of the trial court to make any additional findings or conclusions. Tex.R. Civ. P. 298. "When findings of fact are filed by the trial court they shall form the basis of the judgment upon all grounds of recovery and of defense embraced therein." Tex.R. Civ. P. 299. On appeal, the judgment may not be supported by a presumed finding on any ground of recovery or defense, no element of which has been included in the findings of fact. *Id.* When one or more

---

**2.** The relevant portion of the record reads as follows:

  A. [PERRY]: Like I said I didn't deal with her. I dealt with Dr. Lewis.

  Q. [SMITH–GILBARD'S ATTORNEY]: I am asking the question again, Ms. Perry.

Are you aware of any evidence that my client, Ms. Gilbard, the person you sued in this litigation, was mistaken concerning the property that she bought from you?

  A. I am not aware of it, no.

elements of a claim or defense have been found by the trial court, omitted, unrequested elements, when supported by the evidence, will be supplied by presumption in support of the judgment. *Id.* .

■■■■■ Texas law does not presume agency, and the party who alleges it has the burden of proving it. *IRA Resources, Inc. v. Griego,* 221 S.W.3d 592, 597 (Tex. 2007); *Sanders v. Total Heat & Air, Inc.,* 248 S.W.3d 907, 913 (Tex.App.-Dallas 2008, no pet.). The record in this case does not support any agency relationship between Smith–Gilbard and Dr. Lewis or Raymond, insofar as the disputed real estate transaction was concerned. As for Musso, Smith–Gilbard testified that Musso was a real estate broker and a former partner, and they had worked together in Rockwall "for years." He prepared the contract because "[o]ne of the cardinal rules of real-estate is don't represent yourself." But even if one assumes Musso was Smith–Gilbard's agent, and there is no finding to that ef-

fect, the record does not reflect any representations or even discussions between Perry and Musso regarding the property line or what portion of that property was intended to be conveyed. Furthermore, the contract between the parties stated that Dr. Lewis was designated by the seller, Perry, "as Agent for Rezoning," but the zoning issues occurred after the closing.

· We therefore conclude that Perry's sole cause of action for mutual mistake is not supported by legally sufficient evidence, and we sustain Smith–Gilbard's first issue. We do not address Smith–Gilbard's second issue. We reverse the trial court's judgment and render judgment in favor of Smith–Gilbard.