# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-11-00280-CV

**James Samson and Candace Sanger, Appellants**

**v.**

**Valerie Samson, Appellee**

### FROM THE DISTRICT COURT OF CALDWELL COUNTY, 22ND JUDICIAL DISTRICT
### NO. 09-316, HONORABLE CHARLES R. RAMSAY, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

James Samson and Candace Sanger appeal from a trial court's judgment concluding that James's mother, Valerie Samson, is the sole owner of a certain piece of real property located in Caldwell County, Texas, and ordering appellants to execute "curative documents" reflecting this conclusion. We will reverse and remand.

### FACTUAL AND PROCEDURAL BACKGROUND

At issue is the ownership of property located at 32 School Street in Prairie Lea, Caldwell County ("the Property"). In July 2007, the Property was conveyed by warranty deed to "Valerie Samson, an unmarried woman and James Samson and Candace Sanger, husband and wife." In 2009 Valerie[1] sued James and his wife Candace, alleging that they had made "certain promises"

---

[1] Because two of the parties share a surname, for ease of reference we will refer to the parties by their given names.

to her to entice her to move from California to Texas, and that Valerie had "allowed" their names to be placed on the deed. Alleging that the three were "co-owners of a possessory interest" in the Property, she sought a partition of the property among the co-owners "in accordance with their respective interests," which she alleged was an undivided one-third interest held by each of them. Valerie further alleged that she had made all the payments required for the maintenance and upkeep of the Property, including the entire purchase price and all property taxes, and requested that the court order the Property sold and "direct all proceeds from the sale" to her. James and Candace filed an answer in which they denied having made any promises to Valerie, requested that the Property be sold and the proceeds divided among the three owners, and asserted a counterclaim for contribution and rent seeking to recover from Valerie for the value of maintenance and upkeep they performed on the Property as well as rent to compensate them for Valerie's having lived at the Property from March 2007 through March 2010. James and Candace contended that when the Property was purchased, Valerie told them that she was giving them each a one-third interest in the Property.

The case was tried before the court in September 2010. At trial Valerie argued, apparently for the first time, that James's and Candace's names were "inadvertently" added to the deed, which she asserted was supposed to be in her name only. Valerie took the position that she did not intend to give James or Candace any interest in the Property, and that because she had paid the entire purchase price as well as all property taxes and utilities for the Property, she was asking the court to order that the Property be sold and that Valerie retain all proceeds from the sale. Valerie testified at trial that she "did not realize" that James's and Candace's names would be on the

2

"purchase," did not want their names to be on the "purchase," and was not aware of signing any document that would result in the Property being conveyed to all three of them. Valerie testified that she did not understand at the time that she signed the earnest money contract that it listed James and Candace as buyers along with her, and further that she did not understand the legal effect of either the earnest money contract or the deed of trust. Valerie claimed that "she just signed [the documents] as they were given to [her]," and believed that she was the only person with an ownership interest in the Property because she paid the entire purchase price and did not intend to give any interest in the Property to either James or Candace.

James testified that he, Candace, and Valerie each owned one-third of the Property. He testified that until the deed of trust was signed, he did not realize that Valerie was going to give him and Candace each a one-third interest in the Property. He testified that Valerie called him and asked him to take her to a notary to execute some documents and that on the way there she told him she was giving him and Candace an interest in the Property.

After trial, the court signed a judgment stating that Valerie "is the sole owner of the subject real property of this litigation" and ordering James and Candace to "execute curative documents, to be filed with the Caldwell County Clerk, reflecting the ruling of this Court within thirty (30) days." James and Candace perfected this appeal.

## DISCUSSION

On appeal, James and Candace contend that the trial court's conclusion that Valerie is the sole owner of the property is against the great weight and preponderance of the evidence and that rendering judgment to that effect was contrary to Texas law. The trial court's judgment was,

3

in essence, a reformation of the deed to eliminate James's and Candace's names and thereby "correct" it to reflect that Valerie alone owned the Property. At trial, Valerie testified that the deed did not set out the true terms of the transaction she intended to enter into—i.e., she paid the entire purchase price and intended that the Property be in her name alone. The trial court apparently agreed and ordered that the deed be "cured" to reflect the transaction Valerie claims to have intended.

When a party to a title instrument contends that the document does not set out the true terms of the transaction, that party may seek the equitable remedy of reformation. *Thalman v. Martin*, 635 S.W.2d 411, 413 (Tex. 1982). On proof of the terms of the actual, intended agreement, coupled with proof that the written instrument is in error due to either mutual mistake or unilateral mistake accompanied by the adversary's inequitable conduct, the trial court may, in effect, rewrite the document to reflect the parties' intent. *See Davis v. Grammar*, 750 S.W.2d 766, 767-68 (Tex. 1988). Inequitable conduct may be found to exist when one party knows a writing contains a mistake but does not mention the mistake in order to benefit from the other party's oversight. *See id*. at 768 (holding that this type of "mistake and silence" is equivalent to mutual mistake); *Cambridge Cos., Inc. v. Williams*, 602 S.W.2d 306, 309 (Tex. Civ. App.—Texarkana 1980) (holding that party's silence in face of known mistake constitutes "inequitable conduct"), *aff'd*, 615 S.W.2d 172 (Tex. 1981). In such instances, the silent party will not be allowed to take unfair advantage of a known mistake. *See, e.g.*, *Hamberlin v. Longview Bank & Trust Co.*, 770 S.W.2d 12, 14 (Tex. App.—Texarkana 1989, writ denied). Thus, in order for the trial court's reformation of the deed to be proper, it must have found that (1) the true intention of the parties was that Valerie be the sole owner of the Property, and (2) the deed misrepresents that agreement because

4

of either a mutual mistake or a mistake by Valerie coupled with James's and Candace's inequitable conduct in failing to inform Valerie of the known mistake. *See Smith-Gilbard v. Perry*, 332 S.W.3d 709, 713-14 (Tex. App.—Dallas 2011, no pet.).

In its findings of fact the trial court found that Valerie did not know that James's and Candace's names were included on the deed at the time it was executed and that Valerie did not intend to make a gift of two-thirds interest in the Property to James and Candace. The trial court did not, however, make any express finding that the true intention of the parties was that Valerie be the sole owner of the Property or that either James or Candace engaged in inequitable conduct by failing to inform Valerie of the fact that the deed did not reflect this shared intention. Moreover, there was insufficient evidence introduced at trial to support any implied finding of inequitable conduct by James and Candace. Valerie testified simply that she did not read what she signed. There was no evidence tending to show, or raising a reasonable inference, that James or Candace knew that their names were mistakenly placed on the deed but remained silent in order to benefit from the mistake.

The cursory evidence before the trial court, consisting almost exclusively of Valerie's contention that she did not understand the real estate transaction, was simply not sufficient to support a judgment effectively reforming the deed to eliminate James's and Candace's names as grantees under the conveyance. We therefore conclude that the trial court erred in doing so and that its judgment must be reversed. The record is woefully undeveloped, however, which may be explained by the fact that, until trial, Valerie's position, as stated in her pleadings, was that each of the parties had a one-third ownership interest in the property. It was only at trial that Valerie

5

claimed that James's and Candace's names were not supposed to be on the deed.[2]  In light of this undeveloped record, we conclude that the interests of justice require that we remand the cause for further proceedings to allow the parties to fully litigate the material fact issues regarding ownership of the Property.  *See* Tex. R. App. P. 43.3(b).

## CONCLUSION

We reverse the trial court's judgment and remand the cause to the trial court for further proceedings consistent with this opinion.

_____

J. Woodfin Jones, Chief Justice

Before Chief Justice Jones, Justices Pemberton and Rose

Reversed and Remanded

Filed:  June 13, 2012

---

[2]  Although counsel for James and Candace voiced his general objection to the new theory introduced at trial, he did not object specifically to Valerie's testimony, and Valerie contends that as a consequence her reformation theory was tried by consent.