**AFFIRMED and Opinion Filed August 15, 2023**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

## No. 05-22-00403-CV

**KOKB MEDICAL PROPERTIES, LLC, SULLIVAN R. BRYANT, AND FINCH CLINIC, PLLC, Appellants**
**V.**
**DTC PARTNERS, LLC—SERIES I, A SERIES OF DALLAS TEXAS CAPITAL PARTNERS, LLC, Appellee**

**On Appeal from the 160th Judicial District Court**
**Dallas County, Texas**
**Trial Court Cause No. DC-19-03360**

## MEMORANDUM OPINION

Before Justices Reichek, Nowell, and Garcia
Opinion by Justice Reichek

Following the foreclosure sale of property securing a promissory note, DTC Partners, LLC—Series I, A Series of Dallas Texas Capital Partners, LLC brought a deficiency action against KOKB Medical Properties, LLC and Sullivan R. Bryant. DTC also alleged KOKB, Bryant, and Finch Clinic, PLLC fraudulently transferred real property with intent to defraud DTC. The trial court granted summary judgment for DTC on its claims and against KOKB and Bryant on counterclaims they brought

against DTC. KOKB, Bryant, and Finch Clinic challenge the trial court's summary judgment in five issues. We affirm.

## BACKGROUND

On November 30, 2001, KOKB executed a promissory note in the amount of $204,750 in favor of InterBay Funding, LLC to purchase nine separate parcels of land. The note was secured by a deed of trust on the nine properties.

In 2006, KOKB refinanced the loan with InterBay. On February 17, 2006, KOKB entered into a new promissory note in the amount of $263,250, and funds from that note were used to pay off the first note. Bryant, KOKB's sole managing member, signed a guaranty and guaranteed repayment of the second note. The second note was secured by a deed of trust granting a lien on two parcels of real property in Dallas, 3534 N. Hampton Road and 3538 N. Hampton Road ("the Hampton properties"). The Hampton properties were two of the nine parcels that secured the first note. KOKB and Bryant would later contend the second note was supposed to have been secured by all nine properties that had secured the first note.

In August 2006, InterBay assigned the second note and deed of trust to Bayview Loan Servicing, LLC. Almost five years later, on June 28, 2011, KOKB and Bryant entered into a stipulation agreement and a loan adjustment agreement with Bayview regarding the second note. The stipulation agreement recited that the loan was past due in an amount over $50,000. Bayview agreed to suspend foreclosure proceedings if KOKB and Bryant complied with the terms of the

stipulation agreement and executed the loan adjustment agreement. The agreements modified the balance and the repayment terms of the note. No changes were made to the deed of trust.

In April 2018, Bayview assigned the second note, which was in default, and guaranty to DTC. The two Hampton properties securing the second note were scheduled for foreclosure on July 3, 2018.

A few days before the scheduled foreclosure sale, KOKB and Bryant brought suit in the 95th Judicial District Court of Dallas County against DTC to stop the foreclosure. KOKB and Bryant admittedly stopped paying on the note years prior to get Bayview's attention over an issue with Bayview's alleged failure to pay property taxes. As alleged in that petition, in 2014, Bryant learned the second note was secured by only two of the nine properties that secured the first note. KOKB and Bryant alleged that "review of the refinancing closing documents revealed that a second page of the property description was missing and did not get filed by Bayview." According to KOKB and Bryant, Bayview assured them it would work to "restore a loan" secured by all nine parcels. KOKB and Bryant alleged they relied on Bayview's promises it would adjust the note to correct the problem with the collateral. In addition to a claim for injunctive relief to stop the sale, KOKB and Bryant asserted a breach of contract claim against DTC. They alleged Bayview and InterBay breached the note by failing to review KOKB and Bryant's request for

–3–

reinstatement and payment of delinquent taxes. They argued DTC stepped into the shoes of Bayview and InterBay.

DTC moved for summary judgment in the prior suit on grounds it was the holder of the note and deed of trust and had authority to foreclose on the property. Further, it was undisputed that KOKB and Bryant failed to make payments for years and were in default. DTC argued the fact that, although the payment terms of the note were modified in 2011 by agreement of the parties, the description of the pledged collateral was not modified. On September 22, 2018, the 95th District Court granted DTC's motion and ordered that KOKB and Bryant take nothing on their claims against DTC.

The Hampton properties were then scheduled for foreclosure on November 6, 2018. Thereafter KOKB filed for bankruptcy. DTC asked the bankruptcy court for relief from the automatic stay as to the Hampton properties so it could proceed with foreclosure. On January 3, 2019, the bankruptcy court granted DTC's motion and lifted the automatic stay with respect to the Hampton properties.

The two Hampton properties were sold at a foreclosure sale on March 5, 2019. DTC purchased the properties for $250,000.

On March 7, 2019, DTC filed the instant suit against KOKB and Bryant, alleging that after the proceeds of the sale were applied to KOKB's balance, $464,966.59 was still owed on the second note. DTC later amended its pleadings to add defendants My Mail Center LC, John W. Dodd, and appellee Finch Clinic,

PLLC. DTC added new claims involving the allegedly fraudulent transfer of real property among these parties.

The fraudulent transfer claims involve the following facts. On May 1, 2017, KOKB executed a deed of trust that gave "My Medical Center, LC" a security interest in many of KOKB's properties, including the two Hampton properties. That deed of trust secured a $100,000 loan My Medical Center made to KOKB. Bryant says he believed the second note had been written off at that point and he intended to give My Medical Center a first priority lien for the properties. Apparently "My Medical Center" is actually "My Mail Center." Dodd, sole owner of My Mail and Bryant's long-time accountant, is listed as the trustee on the deed of trust between KOKB and My Medical Center. Dodd admitted in his deposition that the name My Medical Center was "inadvertently used" and was a mistake.

Almost two years later, on February 1, 2019, ahead of the foreclosure sale of the Hampton properties scheduled for March 5, KOKB executed a General Warranty Deed to My Mail. For "[c]ash and other good and valuable consideration," KOKB transferred seven Dallas properties to My Mail. The two Hampton properties were not part of the transfer. KOKB later transferred a Hunt County property to My Mail.

There was another transfer of property while the deficiency suit was pending. On September 14, 2020, My Mail transferred five properties to appellee Finch Clinic in a Special Warranty Deed. Three of the properties were among those transferred from KOKB to My Mail in February 2019. The other two were the Hampton

properties. Finch Clinic's only manager is Bryant. The Special Warranty Deed indicates the consideration for the transfer was $20.00 and "other good and valuable Consideration."

DTC's live pleading asserted claims for violations of the Texas Uniform Fraudulent Transfer Act ("TUFTA") based on KOKB's conveyance of eight properties to My Mail and based on My Mail's conveyance of five properties to Finch Clinic. DTC alleged the properties were transferred with intent to hinder, delay, and defraud KOKB and Bryant's creditors, including DTC. It also sought to quiet its title to the two Hampton properties. DTC alleged its title to those properties was superior to Finch Clinic's claim to those properties under the Special Warranty Deed. DTC also sought exemplary damages under a slander-of-title theory and an injunction prohibiting the defendants from transferring the properties, entering the Hampton properties, and advertising the properties for sale.[1]

KOKB and Bryant filed counterclaims against DTC for wrongful foreclosure, breach of contract, conversion, and violations of the Texas Theft Liability Act. They alleged InterBay refused to accept payments on the second note until the collateral issue was resolved. InterBay told Bryant it would take care of the delinquent taxes if he and KOKB would execute a new note and deed of trust with all nine properties

---

[1] DTC's live pleading added another defendant, Guel Family Builders, Inc. DTC alleged four of the properties fraudulently transferred to My Mail/Dodd were later fraudulently transferred to Guel. After Guel asserted a bona fide purchaser defense, DTC nonsuited its claims against Guel.

as collateral. Bryant agreed and waited for InterBay to provide new documents. Years passed, but InterBay had not drafted new documents and refused to accept payments on the note. After the second note was assigned to Bayview, Bryant informed Bayview of the situation and Bayview said the second note would be written off.[2] Thereafter, Bayview assigned the second note to DTC.

KOKB and Bryant alleged DTC had no legal authority to foreclose on the Hampton properties because DTC had assumed a cancelled note, as Bayview told Bryant the second note had been written off. They alleged DTC breached the contract it allegedly assumed when DTC claimed the second note was in default and foreclosed. KOKB and Bryant alleged they were ready and willing to perform the second note, but Bayview refused to accept payment until the collateral mistake was corrected. For the same reasons, KOKB and Bryant asserted DTC wrongfully converted the Hampton properties used as collateral in the second note. Finally, KOKB and Bryant alleged DTC's wrongful foreclosure constituted a violation of

---

[2] KOKB and Bryant's Original Counterclaim mistakenly asserts that InterBay assigned the second note to Bayview in 2009. The undisputed evidence shows InterBay assigned the second note and deed of trust to Bayview in August 2006, just a few months after the original loan was refinanced. Apparently because of confusion over the timing of that assignment, KOKB and Bryant alleged in their Original Counterclaim that they brought the collateral issue to *InterBay's* attention and *InterBay* agreed to execute new documents and refused to accept payments for years. Yet later in the pleading, KOKB and Bryant allege it was Bayview that refused to accept their payments. This is consistent with their allegations in the prior suit.

the Texas Theft Liability Act.[3] *See* TEX. CIV. PRAC. & REM. CODE ANN. § 134.003(a) (person who commits theft is liable for resulting damages).

DTC filed a motion for partial summary judgment. It asserted it was entitled to summary judgment on all of KOKB and Bryant's counterclaims on res judicata grounds. DTC also asserted that the breach of contract claim was barred by limitations. In addition, DTC sought summary judgment on its fraudulent transfer claims. DTC argued the record conclusively established that KOKB and My Mail violated TUFTA when they made the My Mail and Finch Clinic conveyances. DTC asked the trial court to void the My Mail and Finch Clinic conveyances.

The trial court granted DTC's motion for partial summary judgment. It ordered that KOKB and Bryant take nothing on their counterclaims against DTC. The trial court also voided the conveyances to My Mail and the Finch Clinic.

Thereafter, DTC filed a second motion for partial summary judgment. DTC sought judgment as a matter of law against KOKB and Bryant for the deficiency on the second note. It also moved for summary judgment on its quiet title claim. It argued that My Mail's representation of ownership in the September 14, 2020

---

[3] KOKB and Bryant also filed a third-party petition against InterBay and Bayview, asserting claims for breach of contract, fraud, negligent misrepresentation, breach of fiduciary duty, and negligence. InterBay and Bayview moved for summary judgment on grounds the claims against them were barred by the res judicata effect of the lawsuit in the 95th District Court, by the statute of limitations, and by the economic-loss rule. The trial court granted InterBay and Bayview's motion for summary judgment. KOKB and Bryant do not challenge the summary judgment for those parties.

Special Warranty Deed and attempted conveyance to Finch Clinic clouded DTC's title to the Hampton properties, which DTC purchased in March 2019 at the foreclosure sale. DTC claimed the evidence conclusively established that the cloud placed on DTC's title by the Special Warranty Deed should be cleared.

The trial court granted DTC's second partial motion for summary judgment. It awarded judgment for DTC against KOKB and Bryant, jointly and severally, on the deficiency in the amount of $771,913.76, plus attorney's fees, post-judgment interest, and court costs. It also declared the September 14, 2020 Special Warranty Deed between My Mail and Finch Clinic void to the extent it attempted to convey any interest in the two Hampton properties. DTC then nonsuited its claim for exemplary damages.

In this appeal, KOKB, Bryant, and Finch Clinic contend the trial court erred in granting both partial motions for summary judgment. First, KOKB and Bryant contend their counterclaims were not barred by res judicata or the statute of limitations. Appellants next argue allege that DTC's TUFTA claims fail. Finally, KOKB and Bryant assert the trial court erred in granting the second partial motion for summary judgment because the second note was not a valid, enforceable contract and because DTC failed to provide a proper accounting for the deficiency.

### FIRST SUMMARY JUDGMENT ORDER

***KOKB and Bryant's Counterclaims***

In their first issue, KOKB and Bryant contend the trial court erred in finding that their counterclaims against DTC were barred by res judicata. Res judicata requires proof of three elements: (1) a prior final judgment on the merits by a court of competent jurisdiction, (2) identity of parties, and (3) a second action based on the same claims as were raised or could have been raised in the first action. *Rosetta Res. Operating, LP v. Martin*, 645 S.W.3d 212, 225 (Tex. 2022). KOKB and Bryant challenge the third element. They argue their counterclaims could not have been brought in their prior lawsuit against DTC in the 95th District Court because the claims are based on DTC's alleged wrongful foreclosure and the foreclosure sale took place after the first judgment.

We review the granting of a motion for summary judgment de novo. *Merriman v. XTO Energy, Inc.*, 407 S.W.3d 244, 248 (Tex. 2013). A party moving for a traditional summary judgment has the burden of proving that there is no genuine issue of material fact and that the movant is entitled to judgment as a matter of law. TEX. R. CIV. P. 166a(c).

Res judicata is the generic term for a group of related concepts concerning the conclusive effects given final judgments. *Barr v. Resolution Trust Corp.*, 837 S.W.2d 627, 628 (Tex. 1992). Texas courts follow the transactional approach to res judicata. *Id.* at 631. Under this approach, the doctrine bars lawsuits that arise out of the same subject matter as a prior suit when, with the use of diligence, the subject matter could have been litigated in the prior suit. *Eagle Oil & Gas Co. v. TRO-X,*

–10–

*L.P.*, 619 S.W.3d 699, 705 (Tex. 2021); *Funmilayo v. Velandera Energy Partners LLC*, No. 05-21-01015-CV, 2023 WL 2472891, at \*4 (Tex. App.—Dallas Mar. 13, 2023, pet. denied) (mem. op.).  In determining what constitutes the same subject matter, we examine the "factual basis of the claim or claims in the prior litigation" and analyze "the factual matters that make up the gist of the complaint, without regard to the form of action."  *Funmilayo*, 2023 WL 2472891, at \*4 (quoting *Barr*, 837 S.W.2d at 630).  The doctrine is necessary to bring an end to litigation, prevent vexatious litigation, maintain the stability of court decisions, promote judicial economy, and prevent double recovery.  *Eagle Oil & Gas*, 619 S.W.3d at 705; *Barr*, 837 S.W.2d at 630.

In its first motion for partial summary judgment, DTC argued KOKB and Bryant's counterclaims for wrongful foreclosure, breach of contract, conversion, and violations of the Texas Theft Liability Act were barred by the res judicata effect of the judgment in the suit in the 95th District Court in Dallas County.[4]  That prior suit was brought against DTC by KOKB and Bryant in June 2018, days before the scheduled foreclosure sale of the Hampton properties.  KOKB and Bryant sought a temporary restraining order prohibiting DTC from going forward with the sale.

---

[4] In its appellate brief, DTC argues the bankruptcy court's decision to lift the stay as to the Hampton properties also has a preclusive effect on the counterclaims.  DTC contends the bankruptcy court determined the validity of the second note when it lifted the stay to allow foreclosure.  DTC did not, however, move for summary judgment on that ground. Although DTC mentioned the bankruptcy proceeding in its first summary judgment motion and attached some bankruptcy documents to the motion, DTC's res judicata argument was based only on the judgment in the 95th District Court.

They alleged they had relied on Bayview's promises to adjust the note to correct the problem with the collateral. KOKB and Bryant alleged that Bayview and InterBay breached the second note by failing to review KOKB and Bryant's request for reinstatement and payment of delinquent taxes. They argued DTC stepped into the shoes of Bayview and InterBay as the breaching party.

In the prior suit, DTC moved for summary judgment on grounds it was the holder of the note and deed of trust and had authority to foreclose on the property. It was undisputed that KOKB and Bryant failed to make payments and were in default. DTC further argued that any modification to pledge more collateral for the second note was required to be in writing and there was none. Instead, the evidence showed that KOKB, Bryant, and Bayview agreed to modify the payment terms of the second note in 2011, and the description of the pledged collateral was not modified. On September 22, 2018, the 95th District Court granted DTC's motion and ordered that KOKB and Bryant take nothing on their claims against DTC.

In the instant suit, KOKB and Bryant's counterclaims for wrongful foreclosure, breach of contract, conversion, and violations of the Texas Theft Liability Act are all based on the premise that there had been a mistake in which properties were collateral for the second note and Bayview refused to accept payment on the note because it was going to revise the loan documents to correct the issue. This is the same set of facts on which KOKB and Bryant sought to avoid foreclosure in the first suit. The trial court in the first suit, in granting summary

–12–

judgment for DTC, already determined these issues adversely to KOKB and Bryant. Under the transactional approach, KOKB and Bryant's claims in the prior lawsuit and in this case arise from the same subject matter for purposes of res judicata. *See Ohio Gravy Biscuit, Inc. v. NRZ Pass-Through Trust X*, No. 05-20-00881-CV, 2022 WL 1164660, at *6 (Tex. App.—Dallas Apr. 20, 2022, no pet.) (mem. op.) (quiet title counterclaim was barred by res judicata because it arose out of same transaction in prior suit where deed of trust was at issue); *McMillan v. Tally Two Inv. Grp., LLC*, No. 03-20-00452-CV, 2022 WL 319854, at *2 (Tex. App.—Austin Feb. 3, 2022, pet. ref'd) (mem. op.) (issue of validity of warranty deed had been finally adjudicated and res judicata barred further attempts to invalidate deed). We are not persuaded by KOKB and Bryant's argument that res judicata does not apply because they could not have brought a wrongful foreclosure claim prior to foreclosure. The subject matter upon which their wrongful foreclosure claim and other claims are premised was previously litigated in the 95th District Court. To allow KOKB and Bryant to relitigate the issue of the validity of the second note and deed of trust would run counter to the principles behind the doctrine of res judicata. We conclude DTC was entitled to summary judgment on the counterclaims under the doctrine of res judicata. We overrule KOKB and Bryant's first issue.

In their second issue, KOKB and Bryant contend the trial court erred in granting summary judgment on limitations grounds. Because we have concluded

–13–

that res judicata barred KOKB and Bryant's counterclaims, we need not address this issue. *See* TEX. R. APP. P. 47.1.

### *Fraudulent Conveyance/TUFTA Claims*

In their third issue, KOKB and Bryant contend the trial court erred in granting summary judgment for DTC on its claim that KOKB's transfer of properties to My Mail violated TUFTA. KOKB and Bryant first argue that TUFTA did not apply because the transferred properties were not assets as defined by TUFTA.

TUFTA's purpose is to prevent debtors from prejudicing creditors by improperly moving assets beyond their reach. *Janvey v. Golf Channel, Inc.*, 487 S.W.3d 560, 566 (Tex. 2016). TUFTA provides that a transfer made by a debtor is fraudulent as to a creditor if the debtor made the transfer with actual intent to hinder, delay, or defraud any creditor of the debtor. TEX. BUS. & COM. CODE ANN. § 24.005(a). "Transfer" means every mode of disposing of or parting with an asset or interest in an asset. *Id.* § 24.002(12). "Asset" means property of a debtor, but does not include property to the extent it is encumbered by a valid lien. *Id.* § 24.002(2). The value of property in excess of a lien encumbering it is an "asset" under TUFTA. *See Telephone Equip. Network, Inc. v. TA/Westchase Place, Ltd.*, 80 S.W.3d 601, 610 n.6 (Tex. App.—Houston [1st Dist.] 2002, no pet.).

In their opening brief, KOKB and Bryant asserted that the properties at issue were not assets under TUFTA because they were encumbered by a valid lien. They refer to the May 1, 2017 deed of trust executed in favor of "My Medical Center." In their reply brief, KOKB and Bryant acknowledge that any equity in the property above the amount of the lien would be an asset under TUFTA. They also acknowledge that the properties' equity exceeds the amount of the $100,000 lien. Although the parties disagree about the amount of equity, the properties meet the definition of "asset" and TUFTA applies.

KOKB and Bryant's other arguments under this issue involve evidence of the intent to defraud. In determining actual intent under § 24.005(a)(1), TUFTA provides a list of eleven, nonexclusive indicia of fraudulent intent. *Janvey*, 487 S.W.3d at 566; *see* TEX. BUS. & COM. CODE ANN. § 24.005(b). Evidence of a single "badge of fraud" does not conclusively demonstrate intent, but a confluence of several presents a strong case of fraud. *Janvey*, 487 S.W.3d at 566–67.

KOKB and Bryant say DTC relied on just three of the eleven factors in § 24.005(b) to show fraudulent intent: (1) the transfer was to an insider (My Mail), (2) the value of the consideration received by KOKB was less than reasonable value of the assets transferred, and (3) KOKB was insolvent or became insolvent shortly after the transfer was made. *See* TEX. BUS. & COM. CODE ANN. § 24.005(b) (1), (8) & (9). KOKB challenges the evidence to support these three factors. It argues My Mail

was not an insider of KOKB, the properties were transferred for a reasonably equivalent value, and KOKB and Bryant were not insolvent at the time of transfer.

In fact, DTC argued in its summary judgment motion that seven of the factors in § 24.005(b) showed intent to defraud. In addition to the three already mentioned, DTC asserted that (1) KOKB and Bryant retained control of the transferred properties after the transfer; (2) they were aware of the imminent deficiency suit at the time of the transfers, (3) the My Mail conveyances were for substantially all of KOKB's assets, and (4) KOKB transferred all of its property to My Mail, an alleged lienor, who transferred much of the properties to Finch Clinic, an insider. *See id.* § 24.005(b) (2), (4), (5) & (11). By failing to challenge these factors upon which DTC relied to show it was entitled to summary judgment, KOKB and Bryant have failed to negate all possible grounds for summary judgment. *See Jarvis v. Rocanville Corp.*, 298 S.W.3d 305, 313 (Tex. App.—Dallas 2009, pet. denied). DTC was not required to produce evidence of all eleven factors to show intent. The trial court could have determined that the four unchallenged factors alone supported a conclusion that KOKB acted with intent to defraud. *See Tidwell v. Roberson*, No. 14-16-00170-CV, 2017 WL 3612043, at *3–4 (Tex. App.—Houston [14th Dist.] Aug. 22, 2017, pet. denied) (mem. op.) (upholding summary judgment on fraudulent transfer claim where plaintiffs presented evidence of three badges of fraud). By failing to challenge all factors relevant in this case to the intent to defraud, KOKB

and Bryant cannot demonstrate that summary judgment on DTC's TUFTA claim was improper.

Further, the evidence conclusively established that My Mail was an insider, another "badge of fraud." KOKB and Bryant argue Dodd, My Mail's sole owner, does not meet the TUFTA definition of an insider or otherwise qualify as one. If the debtor is a corporation, the term "insider" *includes*: the director of the debtor, an officer of the debtor, a person in control of the debtor, a partnership in which the debtor is a general partner, a general partner in a partnership in which the debtor is a general partner, or a relative of a general partner, director, officer, or person in control of the debtor. TEX. BUS. & COM. CODE ANN. § 24.002(7)(B). The TUFTA definition of "insider" does not limit an insider to the listed descriptions. *Putman, M.D.P.A. Money Purchase Pension Plan v. Stephenson*, 805 S.W.2d 16, 18–19 (Tex. App.—Dallas 1991, no writ). Here, Dodd was Bryant's accountant of more than forty years. Dodd stated in his deposition that he and Bryant had been friends and business associates since the 1970s. DTC's evidence showed that Dodd allowed Bryant to control the properties after the transfer. Further, after KOKB transferred property to My Mail, My Mail conveyed some of them back to Bryant via the Finch Clinic for just $20. The evidence establishes Dodd's insider status and that status, coupled with the badges of fraud KOKB and Bryant do not challenge, is more than sufficient to conclusively establish actual intent to defraud. We overrule the third issue.

## SECOND SUMMARY JUDGMENT ORDER

KOKB and Bryant's remaining issues involve the summary judgment for DTC on its deficiency claim. In their fourth issue, KOKB and Bryant argue the second note was not a valid, enforceable contract. They argue that a mutual mistake about the collateral for the note prevented the meeting of the minds necessary for contract formation. Alternatively, they argue that if the contract was valid, there was a prior material breach when Bayview refused to accept their payments.

DTC contends KOKB and Bryant waived these arguments. DTC argues KOKB and Bryant failed to plead mutual mistake or prior material breach as affirmative defenses and also failed to argue prior material breach in their response to DTC's summary judgment motion. DTC is correct that KOKB and Bryant did not plead the affirmative defense of prior material breach or argue it in their summary judgment response. Although KOKB and Bryant assert otherwise, they have not included any record references in support of their assertion. An affirmative defense not raised in a responsive pleading is waived, and issues that are not expressly presented to the trial court by written motion, answer, or response will not serve as grounds for reversal of a summary judgment on appeal. *Roark v. Stallworth Oil & Gas, Inc.*, 813 S.W.2d 492, 495 (Tex. 1991); *Parks v. Developers Sur. & Indem. Co.*, 302 S.W.3d 920, 924 (Tex. App.—Dallas 2010, no pet.). The issue of prior material breach has been waived.

Although KOKB and Bryant also did not raise mutual mistake in their answers, it appears the defense was tried by consent. *See Purser v. Coralli*, No. 05-15-00359-CV, 2016 WL 6087675, at *3 (Tex. App.—Dallas Oct. 18, 2016, no pet.) (mem. op.) (in summary judgment context, affirmative defense is tried by consent if nonmovant expressly raises defense in its response, and movant responds to defense on merits without objecting). KOKB and Bryant argued mutual mistake in their summary judgment response. DTC did not argue waiver in its reply. It instead briefly addressed the issue in a footnote.

In their summary judgment response, KOKB and Bryant argued both no meeting of the minds and mutual mistake in the same section. In the footnote in its reply, DTC argued the trial court should not consider a "meeting-of-the-minds argument" because it was "another means to make the same [tired] argument." DTC went on to argue, "Without ambiguity from the Note's terms, and no evidence supporting a *mutual* mistake, KOKB Defendants' allegation that the Note was cancelled is irrelevant." It is possible the trial court interpreted DTC's argument to be that the issue of mutual mistake had been previously litigated and that it agreed with that position. Because DTC's arguments on mutual mistake were not fleshed out in the trial court, however, out of an abundance of caution we will address KOKB and Bryant's argument that fact issues exist regarding mutual mistake. We are aware that consideration of this issue is inconsistent with the determination the

–19–

counterclaims were barred by res judicata because KOKB and Bryant had the opportunity to litigate the allegedly mistaken collateral in the prior suit.

We further note that KOKB and Bryant do not contend the Hampton properties were not supposed to be collateral for the second note. Rather, they seek to avoid the note because those properties—plus additional properties—were to be collateral for the note. It is incongruous for KOKB and Bryant to be seeking to avoid an agreement due to an alleged mistake that they benefitted from.

A mutual mistake of fact occurs when the parties to an agreement have a common intention but the written contract does not reflect the intention of the parties due to a mutual mistake. *Smith-Gilbard v. Perry*, 332 S.W.3d 709, 713 (Tex. App.—Dallas 2011, no pet.). When a party alleges that an agreement does not express the real intentions of the parties by reason of mutual mistake, extrinsic evidence is admissible to show the real agreement. *Id.* To prove a mutual mistake, the evidence must show that both parties were acting under the same misunderstanding of the same material fact. *Id.* The party seeking relief from a mutual mistake must prove what the true agreement was and also that the provisions of the writing that differ from the true agreement made were placed in the instrument by mutual mistake. *Estes v. Republic Nat'l Bank of Dallas*, 462 S.W.2d 273, 275 (Tex. 1970); *Smith-Gilbard*, 332 S.W.3d at 714. Claims that both parties made a mistake regarding the terms in a written agreement are often difficult to prove because a party who signs a document is presumed to know its contents. *Fort Apache Energy, Inc. v. Houston*

–20–

*Energy, L.P.*, No. 09-14-00007-CV, 2015 WL 5042133, at *7 (Tex. App.—

Beaumont Aug. 27, 2015, no pet.) (mem. op.) (citing *Toler v. Sanders*, 371 S.W.3d

477, 482 (Tex. App.—Houston [1st Dist.] 2012, no pet.)).

KOKB and Bryant contend that issues of material fact exist about whether the

second note is enforceable due to mutual mistake. They argue that they and InterBay

intended that all nine properties be included as collateral on the second note. KOKB

and Bryant's briefing of this issue does not identify what source provides this

evidence or include any references to the record for this argument. *See* TEX. R. APP.

P. 38.1(i).

Presumably they rely on Bryant's affidavit to show mutual mistake. In his

affidavit, Bryant states that when he signed the second note, he believed it covered

all nine properties like the first note. On August 29, 2006, Interbay assigned the note

to Bayview. Bryant called Bayview at an unspecified date to explain the collateral

defect, and Bayview acknowledged an error in the closing documents. Bayview

refused to accept further payments until the issue was resolved with the collateral.

Months and years passed while Bryant waited for Bayview to present new

documents. Bryant called Bayview repeatedly. Bayview eventually informed him

the second note was defective and would be written off. However, Bayview later

assigned the second note to DTC.

Bryant's affidavit does not raise a genuine fact issue about whether he/KOKB

and InterBay were mutually mistaken about the collateral for the second note. The

–21–

original parties to the second note were KOKB and InterBay. KOKB has not presented any evidence that InterBay was mistaken about the collateral for the second note. Further, to the extent Bayview's alleged acknowledgement of an error in the closing documents is relevant to the issue of a mutual mistake between KOKB and InterBay, Bayview's undisputed actions counter any evidence there was a mutual mistake. Bayview and KOKB modified the loan documents in 2011, five years after KOKB executed the second note. No changes were made to the collateral, only the repayment terms. Bayview never modified the loan documents in response to Bryant's communications with them. And it never wrote off the note. Bayview instead assigned the note and deed of trust to DTC. Bayview's assignment of the deed of trust lists only the Hampton properties.

In addition, any invalidity of the second note does not impact Bryant's guaranty. The guaranty provides that Bryant's obligations "shall be unconditional irrespective of the genuineness, validity, regularity or enforceability of the Note" and the deed of trust. We overrule KOKB and Bryant's fourth issue.

In their fifth issue, KOKB and Bryant contend the trial court erred in granting summary judgment because DTC did not provide a proper accounting. Without citation to authority, they argue DTC did not provide the trial court with enough information to determine the deficiency owed on the second note.

The trial court awarded DTC actual damages of $771,913.76, which was comprised of: (1) $239,767.36 in principal, (2) $108,576.71 in accumulated interest,

–22–

(3) $87,873.10 in accumulated default interest, (4) $112,629.26 for a negative escrow balance, (5) $58,896.70 in accumulated interest on escrow, (6) $164,330.11 in corporate advances, and (7) $374 in NSF fees. KOKB and Bryant argue DTC provided only a general "six-point bullet list" to support these numbers.

Where a validly executed note goes into default and there is a foreclosure sale of the security for the note, the owner of the note must prove the following elements to be entitled to a judgment for any deficiency remaining on the note: (1) the amount due on the note at the time of foreclosure; (2) that proper notice of acceleration has been given; (3) that a valid foreclosure sale was made; and (4) that it has given credit to the obligor for the amount received at the foreclosure sale and any other legitimate credit. *Thompson v. Chrysler First Bus. Credit Corp.*, 840 S.W.2d 25, 28 (Tex. App.—Dallas 1992, no writ). Courts do not usually require the movant to file detailed proof reflecting the calculations of the balance due on a note in order to support a motion for summary judgment. *Obasi v. Univ. of Okla. Health Sci. Ctr.*, No. 04-04-00016-CV, 2004 WL 2418009, at *1 (Tex. App.—San Antonio Oct. 27, 2004, pet. denied) (mem. op.).

Because DTC was not required to file detailed proof of the calculations reflecting the balance due on the note, this issue is without merit. *See Cha v. Branch Banking & Trust Co.*, No. 05-14-00926-CV, 2015 WL 5013700, at *4 (Tex. App.— Dallas Aug. 25, 2015, pet. denied) (mem. op.) (uncontroverted affidavit made on personal knowledge of bank officer that identifies note and guaranty and recites

principal and interest due is sufficient to support summary judgment). And contrary to KOKB and Bryant's assertion that DTC provided only a short bullet-point summary of the amounts due, DTC's summary judgment evidence included a thirteen-page loan history ledger and a loan history summary authenticated by a business records affidavit. The ledger dates back to the inception of the loan in March 2006, before DTC acquired the note, and has columns for the principal, escrow, and corporate advances which correspond to the amounts in the judgment. The loan history summary contains all the figures awarded to DTC. KOKB and Bryant submitted no evidence to contradict DTC's proof of the amount of the deficiency. We overrule the fifth issue.

We affirm the trial court's summary judgment orders.

/Amanda L. Reichek/
AMANDA L. REICHEK
JUSTICE

220403F.P05



# Court of Appeals
# Fifth District of Texas at Dallas
## JUDGMENT

KOKB MEDICAL PROPERTIES,
LLC, SULLIVAN R. BRYANT,
AND FINCH CLINIC, PLLC,
Appellants

No. 05-22-00403-CV          V.

DTC PARTNERS, LLC-SERIES I,
A SERIES OF DALLAS TEXAS
CAPITAL PARTNERS, LLC,
Appellee

On Appeal from the 160th Judicial
District Court, Dallas County, Texas
Trial Court Cause No. DC-19-03360.
Opinion delivered by Justice
Reichek. Justices Nowell and Garcia
participating.

In accordance with this Court's opinion of this date, the judgment of the trial court is **AFFIRMED**.

It is **ORDERED** that appellee DTC PARTNERS, LLC-SERIES I, A SERIES OF DALLAS TEXAS CAPITAL PARTNERS, LLC recover its costs of this appeal from appellants KOKB MEDICAL PROPERTIES, LLC, SULLIVAN R. BRYANT, AND FINCH CLINIC, PLLC.

Judgment entered this 15th day of August, 2023.