**Affirmed in part; Reversed in part and Opinion Filed November 28, 2023**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

### No. 05-22-00699-CV

**JOY & YOO PROPERTIES, INC., Appellant**

**V.**

**ROEDER HOLDINGS, LLC, Appellee**

**On Appeal from the 160th Judicial District Court**
**Dallas County, Texas**
**Trial Court Cause No. DC-20-06567**

## MEMORANDUM OPINION

Before Justices Pedersen, III, Garcia, and Kennedy
Opinion by Justice Pedersen, III

Joy & Yoo Properties, Inc. (Joy & Yoo) appeals the trial court's Final

Judgment in favor of appellee Roeder Holdings, LLC (Roeder). In a partial summary

judgment, the trial court found Joy & Yoo liable on Roeder's cause of action for

breach of contract and found in Roeder's favor on its claim for declaratory relief. A

jury then assessed damages for the breach of contract claim at $1,098,718.07, and

awarded attorney's fees and costs through trial at $131,460.58, along with contingent

appellate fees. The court's Final Judgment incorporated the partial summary

judgment and the jury's verdict on damages and fees and awarded Roeder interest

on its contract recovery. In five issues, Joy & Yoo challenges: the trial court's summary judgment on the breach of contract claim; the denial of its motion to continue the summary judgment hearing; the trial court's rulings on declaratory relief and attorney's fees under the Uniform Declaratory Judgments Act (the UDJA); the denial of its motion for judgment based on lack of a valid enforceable contract; and the award of overlapping damages amounting to a double recovery.

We affirm the Final Judgment in part and vacate and remand in part.

## BACKGROUND

MDK Burleson (MDK) owned an undeveloped tract of land in Burleson, Texas (the City). Documents indicate the City had approved a preliminary plat of the tract, dividing it into lots numbered 1 through 9. In October 2009, Joy & Yoo and MDK entered into a three-part transaction: Joy & Yoo purchased lot number 2 on MDK's tract; the parties signed a Development Agreement; and they signed an Access, Utility, and Drainage Easement Agreement (the Easement Agreement).

The Development Agreement provided that Joy & Yoo would construct a series of improvements across the tract, identified as Fire Lane and Access Drives, Storm Sewer Improvements, Waterline Improvements, and Sanitary Sewer Improvements (together, the Improvements). The Development Agreement required Joy & Yoo to solicit and to accept bids for this work, to procure all necessary permits from the City, and to complete construction of the Improvements by the earlier of

twenty-four months from the agreement's effective date or eighteen months after Joy & Yoo received a loan commitment for the project.

The Easement Agreement granted Joy & Yoo access to the tract necessary to perform its construction obligations. The agreement also included several provisions involving drainage from the tract, which included further references to a detention pond—first mentioned in the Development Agreement—that was to be constructed on the property.

For one or more reasons not explored in this lawsuit, the property was not developed according to the parties' agreements. On October 4, 2011, MDK's lender, Bank of Texas, N.A. (the Bank), foreclosed on and acquired MDK's land.

Events following the foreclosure did not proceed apace. Indeed, MDK did not inform Joy & Yoo of the foreclosure until March 2013, and the property remained with the Bank until Roeder purchased it in November 2017. Almost two years later, Roeder contacted Joy & Yoo and demanded that it "achieve completion of the improvements within thirty (30) days of this written notice, and do so [in] accordance with the terms and conditions of the Development Agreement." Joy & Yoo responded that its civil engineer was "currently drawing the site plan" but that the City's review of that plan would usually take six to eight weeks; it asked for an extension of Roeder's thirty-day deadline.

Roeder sent a second notice to Joy & Yoo on September 18, declaring it in default and giving notice that Roeder intended to pursue its "rights and remedies"

under the Development Agreement. Roeder stated that it was willing to consider an extension of time for Joy & Yoo to comply with its obligations, but it stated that any extension "must be agreed upon and documented prior to Friday, September 27, 2019." Apparently no such agreement for an extension was reached. A series of emails among Joy & Yoo, the City, and Roeder's counsel confirms that some parts of the preliminary plat would be approved by the City in a final site plan, but details involving the detention pond remained to be resolved. Moreover, it appeared that the City's approval of a final site plan would take five to six months after it was submitted.

On April 15, 2020, Roeder sent its third and final notice of default. This notice included Roeder's request that Joy & Yoo provide an Estoppel Certificate—a proper written request for information regarding the status of construction of the Improvements—as the Development Agreement required; the certificate was not provided.

Roeder filed this lawsuit against Joy & Yoo on May 8, 2020. It urged claims for breach of contract, seeking either specific performance of Joy & Yoo's obligations or damages. It also pleaded a declaratory judgment claim, seeking declarations that the "rights, obligations, conditions, terms, and easements" found within the Development and Easement Agreements ran with the land. Finally, Roeder sought attorney's fees pursuant to provisions in both agreements, section

38.001(8) of the Texas Civil Practice and Remedies Code, and section 37.009 of the UDJA.

Joy & Yoo's answer ultimately included a general denial, a verified denial of a number of facts, and eighteen affirmative defenses, including mutual mistake, impossibility of performance, and a prior breach by Roeder. Joy & Yoo also pleaded a counterclaim for declaratory relief, asking the trial court to terminate the Development Agreement and to declare the Development Agreement and Easement Agreement void.

Approximately four months after it had filed this lawsuit, Roeder filed a traditional Partial Motion for Summary Judgment, seeking judgment as to Joy & Yoo's liability for breach of contract and seeking its requested declarations that the covenants in the Development and Easement Agreements ran with the land. The motion requested a ruling on Roeder's entitlement to attorney's fees based on the contractual and statutory grounds it had pleaded.

The next day, Joy & Yoo sought a continuance of the summary judgment hearing, arguing that it needed time for discovery to respond to the summary judgment motion. The trial court denied that motion.

After Joy & Yoo filed its response to the summary judgment motion, Roeder replied, and a hearing was held. The trial court granted the partial motion for summary judgment as to liability of Joy & Yoo for breach of contract, made the declarations sought by Roeder, and ruled that Roeder was entitled to an award of

attorney's fees and costs "as provided for under Chapter 38 of the Texas Civil Practice and Remedies Code."[1]

A jury heard evidence on the issues of damages and attorney's fees. The court's charge included three questions. Jurors first determined the amount that would compensate Roeder for the breach of contract, assessing the amount to construct the Improvement at $618,718.07 and the lost value to Roeder's land without the improvements at $480,000. In response to the second question, jurors awarded Roeder attorney's fees through trial of $131,460.58, along with contingent appellate fees. And in response to question three, jurors awarded Roeder $19,336 for the litigation expense of paying its testifying expert.[2]

Roeder moved for entry of judgment, and Joy & Yoo filed a Counter-Motion for Judgment and Counter-Motion for Judgment *Non Obstante Veredicto*. The trial court's judgment reaffirmed all issues decided in the partial summary judgment proceeding, including Joy & Yoo's liability for breach of contract and the declarations that the agreements' obligations ran with the land. The judgment included all of the amounts awarded by the jury, and its fee award was premised on

---

[1] Although the summary judgment order did not specifically mention Joy & Yoo's counterclaim or affirmative defenses, the trial court's Final Judgment stated:

> By way of the MSJ Order, this Court also determined and adjudged all of Defendant's counterclaim(s) and requested relief under TEX. CIV. PRAC. & REM. CODE Ch. 37 (the "UDJA"), as well as all of Defendant's affirmative defenses pled in this cause of action, in favor of Plaintiff and against Defendant.

[2] Joy & Yoo does not challenge this award in this Court.

all three bases pleaded by Roeder: "as a prevailing party under the Development Agreement and Easement Agreement, and as provided under the Texas UDJA and Section 38.001 of the Texas Civil Practice & Remedies Code."

This appeal followed.

## DISCUSSION

Joy & Yoo brings five issues on appeal; we address them in turn.

## Summary Judgment on the Contract Claim

In its first issue, Joy & Yoo contends that the trial court erred by granting Roeder's partial motion for summary judgment. We apply well-known standards in our review of traditional summary judgment motions. *See Nixon v. Mr. Prop. Mgmt. Co.*, 690 S.W.2d 546, 548 (Tex. 1985). The movant has the burden to demonstrate that no genuine issue of material fact exists and it is entitled to judgment as a matter of law. TEX. R. CIV. P. 166a(c); *Nixon*, 690 S.W.2d at 548–49. We consider the evidence in the light most favorable to the nonmovant. *20801, Inc. v. Parker*, 249 S.W.3d 392, 399 (Tex. 2008). We credit evidence favorable to the nonmovant if reasonable jurors could, and we disregard evidence contrary to the nonmovant unless reasonable jurors could not. *Mann Frankfort Stein & Lipp Advisors, Inc. v. Fielding*, 289 S.W.3d 844, 848 (Tex. 2009). Within the framework of these standards, we review the summary judgment de novo. *Travelers Ins. Co. v. Joachim*, 315 S.W.3d 860, 862 (Tex. 2010). Joy & Yoo asks us to reverse the summary judgment for five reasons.

*Existence of Valid Contract*

Joy & Yoo alleges in this first argument that, at a minimum, a material fact question exists as to whether the parties had a valid, enforceable contract when Roeder sued. At the outset, we reject Joy & Yoo's framing of this issue: whether a particular agreement is an enforceable contract is a question of law that we must review de novo. *Crisp Analytical Lab, L.L.C. v. Jakalam Props., Ltd*., 422 S.W.3d 85, 89 (Tex. App.—Dallas 2014, pet. denied). Rather than looking for a material issue of fact, then, we will review as a legal question whether Roeder sued for breach of a valid, enforceable contract.

Joy & Yoo contends that the parties' contract terminated by its own terms a year before this lawsuit was filed, leaving Roeder without a valid contract on which to sue. Joy & Yoo relies on the Development Agreement's Termination paragraph 7.12, which provides:

> This Agreement, excluding the indemnification and reimbursement obligations set forth herein (which shall expressly survive any termination of this Agreement), shall terminate upon the earlier of (i) the date which is ten (10) years after the Effective Date; (ii) satisfaction of all obligations set forth herein and payment of all costs and expenses relating thereto, as evidenced by the recordation of a Release with respect to each Lot comprising the MDK Tract; or (iii) the written agreement of all Owners to terminate this Agreement.

Joy & Yoo relies on the first basis for termination, the ten-year time-period. The effective date of the agreement was October 2, 2009. Given that the obligations of the agreement were not ever satisfied, and no written agreement to terminate has been made of record, we agree that the passage of ten years would have terminated

the agreement as of October 2, 2019. Joy & Yoo argues that because Roeder brought suit after that date, the suit must fail. We disagree.

On its face, the Termination paragraph identifies the time when the parties' obligations would come to an end.[3] But nothing in the paragraph cuts off a party's liability for any failure to perform prior to termination. *See, e.g., Sky Grp., LLC v. Vega St. 1, LLC*, No. 05-17-00161-CV, 2018 WL 1149787, at *1 (Tex. App.—Dallas Mar. 5, 2018, no pet.) (mem. op.) (affirming breach of contract recovery when plaintiff had sued after terminating contract). The requirement of an enforceable contract in a breach of contract claim refers to the time when the challenged performance was due, not the time when suit is brought. The timing of filing suit is an issue for the relevant statute of limitations, which has not been raised in this case.

The cases that Joy & Yoo relies on in this argument are inapposite. In each of those cases, the contract terminates because of failure of a condition precedent. *See Cate v. Woods*, 299 S.W.3d 149, 153 (Tex. App.—Texarkana 2009, no pet.) (contract for sale of real property was contingent on buyer's obtaining financing by closing date; when buyer failed to obtain financing timely, contract terminated and could not be enforced later); *see also Nguyen v. Woodley*, 273 S.W.3d 891, 898 (Tex. App.—Houston [14th Dist.] 2008, no pet.) (contract for sale of residence was

---

[3] Indeed, to emphasize that obligations cease at termination, the paragraph identifies the only exceptions, i.e., "the indemnification and reimbursement obligations set forth herein (which shall expressly survive any termination of this Agreement)."

contingent on buyer's ability to obtain financing; when buyer gave notice of inability, contract terminated and could not later be enforced); *see also In re Neutral Posture, Inc.*, 135 S.W.3d 725, 730 (Tex. App.—Houston [1st Dist.] 2003, no pet.) (right to compel arbitration under parties' settlement agreement was contingent on giving notice within agreement's time period; late notice could not enforce arbitration right). "'A condition precedent is an event that must happen or be performed before a right can accrue to enforce an obligation.'" *Solar Applications Eng'g, Inc. v. T.A. Operating Corp.*, 327 S.W.3d 104, 108 (Tex. 2010) (quoting *Centex Corp. v. Dalton,* 840 S.W.2d 952, 956 (Tex. 1992)). In Joy & Yoo's cases, the obligation at issue—to sell the property, to sell the home, or to arbitrate the claim—never arose because the relevant condition was not satisfied. No such condition applies in this case: Joy & Yoo's obligations to make the Improvements arose when the Development Agreement was signed, and it remained obligated to perform up until the agreement terminated. Roeder was not prohibited from bringing suit after the termination as long as the conduct at issue occurred before the termination.

We overrule Joy & Yoo's first challenge to the trial court's summary judgment.

*Fact Issue on Breach by Joy & Yoo*

In its second challenge to the trial court's grant of summary judgment, Joy & Yoo argues that a material fact question exists as to whether it failed to comply with the Development Agreement. Roeder pleaded that Joy & Yoo:

> failed to comply with its contractual obligations to [i] obtain approval of plans for Improvements and the Detention Pond, [ii] procure permits for the Improvements and the Detention Pond[,] [iii] submit construction bids to [Roeder] for construction of the Improvements and Detention Pond, [iv] complete construction of the Improvements and the Detention Pond, and [v] provide Plaintiff an Estoppel Certificate.

Roeder provided Joy & Yoo notice of its failure to comply, but Joy & Yoo did not comply in response. The agreement identifies such a "failure to observe or perform any of the covenants, conditions, or obligations . . . within thirty (30) days after the issuance of a written notice" as a material breach.

Joy & Yoo raises a single responsive argument in this Court. It relies on a contractual provision that allows a failure to complete construction of the improvements to be excused by "Permitted Delays." Such delays are defined by the Development Agreement to include:

> any period or periods of delay caused by strikes, lockouts or other labor disputes, fire or other casualty, the elements or acts of God, *refusal or failure of Governmental Authorities to grant Permits and approvals for the construction of the Improvements despite Lot 2 Owner's best efforts to obtain such Permits and approvals*, or delays attributable to the administration of the construction contract for the Improvements by Engineer. (Emphasis added.)

Joy & Yoo contends that a fact issue exists as to whether, despite its best efforts, the City failed to issue the necessary permits. But Joy & Yoo did not raise the existence

of Permitted Delays during the summary judgment proceeding, and it offered no summary judgment evidence of its "best efforts" or of the circumstances surrounding any denial of permits by the City. Joy & Yoo has failed to preserve this issue for our review.

We overrule Joy & Yoo's second challenge to the summary judgment.

*Fact Issues on Joy & Yoo's Affirmative Defenses*

In its final three arguments in opposition to the summary judgment, Joy & Yoo contends that three of its affirmative defenses were sufficient to defeat Roeder's summary judgment motion. Of course "[t]he mere pleading of an affirmative defense—or many affirmative defenses—cannot defeat a motion for summary judgment." *Holmes v. Graham Mortg. Corp.*, 449 S.W.3d 257, 264 (Tex. App.—Dallas 2014, pet. denied). Instead, a party relying on an affirmative defense to defeat a motion for summary judgment must identify evidence raising a genuine issue of fact as to each element of the defense. *Id.*

Joy and Yoo contends that its defenses of mutual mistake, impossibility, and prior breach defeated Roeder's summary judgment motion. Its briefing of the defenses overlaps and depends on two fact-based theories: (1) development of the property would ultimately require a revision to the proposed drainage system involving placement of a drainage pipe, and (2) neither MDK nor Roeder had subdivided the property as necessary for Joy & Yoo to perform its obligations.

Location of a Drainage Pipe

In its response to the partial summary judgment motion, Joy & Yoo argued that the original parties were mistaken when they executed the Development Agreement "about the fact that the proposed concrete pipe that would have to be laid from the proposed detention pond to the proposed destination would end up in the middle of a proposed road," a fact that would require "at least one more revision" to the original plans. Joy & Yoo posits further that connecting the pipe to the road "would require extending concrete pipe through the land of a third party not a party to the agreement," which would make the agreements "impossible to perform."

To prove a mutual mistake, the evidence must show that both parties were acting under the same misunderstanding of the same material fact. *Smith-Gilbard v. Perry*, 332 S.W.3d 709, 713 (Tex. App.—Dallas 2011, no pet.). When evidence shows that parties to an agreement have contracted under a misconception or ignorance of a material fact, the agreement will be avoided. *Myrad Props., Inc. v. LaSalle Bank Nat'l Ass'n*, 300 S.W.3d 746, 751 (Tex. 2009) (quoting *Williams v. Glash,* 789 S.W.2d 261, 264 (Tex.1990)). Similarly, a duty to perform may be discharged when the contract was to do something that from the outset was impossible. *EM Bldg. Contractors Servs., LLC v. Byrd Bldg. Servs., LLC*, No. 05-

19-00153-CV, 2020 WL 4592791, at *12 (Tex. App.—Dallas Aug. 11, 2020, no pet.) (mem. op.).[4]

Joy & Yoo's evidence on this issue is limited to its president's affidavit testimony that "the concrete pipe would have to extend further through some 3rd party's land that is not a party to this contract or through more of [Roeder's] land that has not been designated in the preliminary plat." Joy & Yoo contends that both it and MDK were unaware of this fact when this contract was executed. The Easement Agreement, however, appears to set forth the location of the detention pond, the location of the drainage easement from Lot 2 to the location of the detention pond, and the location of the reinforced concrete pipe from the detention pond to its end point. But even if Joy & Yoo was somehow mistaken about the import of these drainage features, the summary judgment record contains no evidence of what MDK—the original owner of all the relevant land—was aware of at the time of contracting. Accordingly, Joy & Yoo has failed to establish a fact issue concerning whether the parties were acting under the same misunderstanding of the same material fact. *See Perry*, 332 S.W.3d at 713. Moreover, the Development Agreement provides express, detailed procedures for the parties to follow in the event any revisions need to be made to the original plans. There is no evidence in the summary

---

[4] Performance may also be rendered impossible when—after a contract is made—performance "is made impracticable without [the party's] fault by the occurrence of an event the non-occurrence of which was a basic assumption on which the contract was made." *Id.* Joy & Yoo has never identified such an event.

–14–

judgment record raising a fact issue that "one more revision," made according to the terms of the Development Agreement, would equate to the agreement's being "impossible to perform." *See EM Bldg. Contractors Servs.,* LLC, 2020 WL 4592791, at *12.

Joy & Yoo has failed to raise a material issue of fact on all elements of its defenses of mutual mistake and impossibility involving the drainage issue.

Failure to Subdivide the Property

Joy & Yoo's second argument—which it relies upon for the affirmative defenses of impossibility, mutual mistake, and prior breach—involves a purported failure by MDK and Roeder to cooperate in processes necessary for Joy & Yoo to perform. The failure is sometimes characterized as a failure to subdivide the property and sometimes called a failure to create a final plat. Joy & Yoo asserts that the Development Agreement "began with a false recital that the MDK Addition Preliminary Play had been approved by the City of Burleson . . . [but] the summary judgment evidence showed that no plat had ever been approved by the City of Burleson, and the land had never been subdivided." We understand Joy & Yoo's argument here to include the following:

- Both original parties mistakenly believed the City had already approved the subdivision of the land;

- The City was refusing to issue permits to Joy & Yoo because no final plat was submitted by MDK; and

- When Joy & Yoo learned a final plat subdividing the property was necessary, it asked Roeder "to complete the task," but Roeder refused.

The only summary judgment evidence Joy & Yoo cites for these arguments is a four-paragraph portion of the Affidavit of David Yoo, which states that Roeder has not subdivided its land and that it must do so for Joy & Yoo to apply for permits.[5]

The factual premises of Joy & Yoo's arguments here lack evidentiary support. First, Joy & Yoo's argument that the property had never been subdivided is unsupported by the summary judgment record. The agreements attach detailed specifications showing the tract divided into nine lots, including the location of the detention pond. The plans include both engineer's drawings and metes-and-bounds descriptions of each lot. Perhaps the clearest evidence that an effective subdivision was made is the fact that Joy & Yoo purchased one of the lots and, according to counsel at oral argument, continues to own that division of the property. John

---

[5] The affidavit states:

8. In addition, the preliminary plat in the development agreement is just preliminary. This preliminary plat is incomplete and does not even state where the detention pond must be located. The proposed area where the detention pond is located is just a mere proposal, because the Plaintiff has not even subdivided its land yet.

9. Without a revision of the preliminary plat, that is approved by the city of Burleson, the obligations under the development agreement cannot possibly be performed.

10. Further, Plaintiff has never subdivided its land. Unless it subdivides its land, nobody even knows where the detention pond as mentioned in the development agreement will be located.

11. Plaintiff must plat its land that it owns before any plan can become final. I told the Plaintiff it must plat its land for Joy & Yoo Properties, Inc. to apply for permit to the city of Burleson. However, Plaintiff refused to plat its land.

Roeder, Manager of Roeder, testified in his deposition that the property had in fact been subdivided.

The title of the plans on which the agreements were based, the "MDK Addition Preliminary Plat," makes clear that it is the initial plan from which the parties intended to develop the property. The nature of plans, while detailed, was preliminary, and that is apparent on the face of the agreements. To that end, the Development Agreement stated that "the parties acknowledge that the appropriate Governmental Authorities *must* approve the Plans prior to the issuance of all permits and licenses required to complete the Improvements pursuant to applicable Govemmental Requirements." And the Development Agreement contains specific instructions for making any revisions necessary to the preliminary plans. Joy & Yoo has not identified either a mistaken material fact or any evidence of the mental state of MDK that could support a fact issue on mutual mistake. *See Perry*, 332 S.W.3d at 713.

To the extent Joy & Yoo suggests that Roeder's lack of cooperation made its attempts to obtain permits impossible, we again disagree. Joy & Yoo produced no evidence to support its contention that the City was refusing to issue permits to Joy & Yoo because no final plat subdividing the property had been submitted. Instead, the summary judgment evidence showed the property had in fact been subdivided. In addition, the Development Agreement incorporated safeguards against either owner's obstructing changes required by the City; if the parties were unable to agree

on a way to amend plans according to the City's requirements, the engineer was to identify a solution and proceed with making the necessary changes. But the summary judgment record contains no evidence that Joy & Yoo attempted permitting, was refused by the City, or invoked the contractual process in place if MDK or Roeder were not cooperative. Joy & Yoo raised no material issue of fact on its defense of impossibility.

Finally, it is a fundamental principle of contract law that when one party to a contract commits a material breach of that contract, the other party is discharged or excused from further performance. *Mustang Pipeline Co., Inc. v. Driver Pipeline Co., Inc.*, 134 S.W.3d 195, 196 (Tex. 2004). Joy & Yoo argues that Roeder's failure—whether to get a final plat approved or to subdivide the property—was a material breach of its contractual obligation. We have determined the summary judgment record does not support the factual premise of this claim of material breach because the property was in fact subdivided from the beginning. Joy & Yoo has pointed to no provision within these agreements that charged Roeder with submitting a final plat of the property to the City. We conclude Joy & Yoo failed to raise a material issue of fact on its affirmative defense of prior breach.

We overrule Joy & Yoo's third, fourth, and fifth arguments in opposition to the trial court's partial summary judgment.

**Joy & Yoo's Motion for Continuance**

In its second issue, Joy & Yoo challenges the trial court's denial of its motion for continuance. We review the denial of a motion for continuance for an abuse of discretion. *Moreno v. Silva*, 316 S.W.3d 815, 817 (Tex. App.—Dallas 2010, pet. denied).

Roeder filed suit against Joy & Yoo on May 8, 2020. Approximately four months later, Roeder filed its partial summary judgment motion. The next day, Joy & Yoo filed a verified motion for continuance, arguing that it "need[ed] to conduct discovery to file a sufficient response to Plaintiff's motion for summary judgment." A week later, Joy & Yoo filed an amended motion, which identified actions Joy & Yoo had taken since the filing of the partial summary judgment motion, including requesting dates for Mr. Roeder's deposition, amending its answer (bringing from five to thirteen the number of affirmative defenses pleaded), filing a counterclaim, responding to written discovery from Roeder, and sending its own written discovery to Roeder. It argued that discovery was still ongoing and that it needed "to continue to conduct discovery to adequately defend its case and file a sufficient response to Plaintiff's motion for summary judgment." The trial court denied the amended motion.

In deciding whether a trial court abused its discretion by denying a motion for continuance, we examine various factors such as the length of time the case and motion for summary judgment have been on file, the materiality and purpose of the

discovery sought, and whether the party seeking the continuance has exercised due diligence to obtain the discovery sought. *See Joe v. Two Thirty Nine Joint Venture*, 145 S.W.3d 150, 161 (Tex. 2004).

With respect to timing of traditional motions, Rule 166a(a) states that a party seeking to recover on a claim may move for summary judgment "at any time after the adverse party has appeared or answered." TEX. R. CIV. P. 166a(a). Roeder filed its motion approximately four months after filing suit, after Joy & Yoo had answered, and Joy & Yoo received the twenty-one days' notice required by rule 166a(c). Thus, Roeder did not file its motion for partial summary judgment prematurely. *See Oglesby v. Richland Trace Owners Ass'n, Inc.*, No. 05-19-01457-CV, 2021 WL 3412451, at *3 (Tex. App.—Dallas Aug. 4, 2021, no pet.) (mem. op.).

As to the materiality and purpose of the discovery needed, Joy & Yoo gave no specifics in its amended motion as to the nature of the discovery it needed, let alone why the discovery would be material to a summary judgment response. In its subsequent response to the summary judgment motion, Joy & Yoo did identify several specific sources of information that "given adequate time for discovery, it would have obtained." The sources of this evidence were identified as MDK representatives, a civil engineer, and the City. Joy & Yoo did not explain even at that late date why it had not attempted to gather this evidence after the case was filed or, apparently, even after the summary judgment motion was filed. A litigant is not entitled to a continuance if it fails to employ diligence in its use of the rules of civil

procedure for discovery purposes prior to filing a motion for continuance. *Oglesby*, 2021 WL 3412451, at \*3.

Joy & Yoo posits that it is somehow unfair to force a defendant—faced with a traditional summary judgment—to come forward with sufficient evidence of the defendant's affirmative defenses to defeat the motion. It is, Joy & Yoo contends, as if the defendant is faced with a no-evidence motion on those affirmative defenses. It is true that a plaintiff–movant is under no obligation to negate the defendant's affirmative defenses. *Thompson v. Chrysler First Bus. Credit Corp.,* 840 S.W.2d 25, 28 (Tex. App.—Dallas 1992, no writ). This is a longstanding rule, which predates rule 166a(i) and the no-evidence summary judgment practice in Texas courts. We decline Joy & Yoo's invitation to create a standard that is different from the rules of civil procedure and longstanding case law.

On this record, we conclude Joy & Yoo has not demonstrated that there has been inadequate time to conduct specific material discovery, that it exercised due diligence to obtain the discovery sought, or that the trial court abused its discretion in denying the motion for continuance. We overrule Joy & Yoo's second issue.

## Roeder's Claim for Declaratory Relief

The Final Judgment declares the following:

1. The Development Agreement and the rights, obligations, conditions, terms, and easements set forth therein constitute covenants that run with the land; and

> 2. The Easement Agreement and the rights obligations, conditions, terms, and easements set forth therein constitute covenants that run with the land.

Joy & Yoo does not challenge the substance of these declarations that the covenants run with the land. Instead it contends that because the covenants provide standing for Roeder to sue for breach of the agreements, it was somehow inappropriate for the trial court to consider them under the UDJA rather than simply as an element of the breach of contract claim. Based on this strained preface, Joy & Yoo argues that Roeder was improperly duplicating its breach of contract claim in order to recover attorney's fees and costs under the UDJA. We disagree.

First, as Joy & Yoo concedes, it was Roeder's burden to establish its standing—and capacity—to sue on the two agreements although it was a party to neither.[6] Joy & Yoo's live pleading includes a verified denial that states:

> Defendant denies the fact that Defendant entered into any contract with this Plaintiff. As a matter of fact, Defendant entered into a contract with the previous owner of Plaintiff's real property that is the subject of this lawsuit, which was foreclosed by the bank, and then subsequently purchased by this Plaintiff.

To the extent Roeder's standing or capacity to sue on MDK's agreements was thus challenged, Roeder was prudent to place the issue affirmatively before the trial court. We are unaware of a rule that prohibits employing the UDJA to obtain an affirmative ruling that a plaintiff is in fact the proper plaintiff.

---

[6] The parties have not raised, and we need not decide, whether it is Roeder's standing or its capacity to sue on these agreements that is implicated here.

Similarly, we conclude that Joy & Yoo's complaint about Roeder's recovery of attorney's fees under the UDJA is unfounded. Roeder sought attorney's fees pursuant to provisions in both agreements, section 38.001(8) of the Texas Civil Practice and Remedies Code, and section 37.009 of the UDJA. And, contrary to Joy & Yoo's assertion that the fee award is tied to the Act, the Final Judgment awards fees to Roeder on all three bases: "as a prevailing party under the Development Agreement and Easement Agreement, and as provided under the Texas UDJA and Section 38.001 of the Texas Civil Practice & Remedies Code." Roeder prevailed on its claim for breach of contract and was entitled to recover its fees and litigation expenses pursuant to the terms of the Development and Easement Agreements; Joy & Yoo does not challenge this independent basis for the award. We discern no error in the trial court's award of those amounts to Roeder.

We overrule Joy & Yoo's third issue.

**Motion for Judgment**

In its fourth issue, Joy & Yoo contends that the trial court erroneously denied its motion for judgment because the evidence conclusively showed that the Development Agreement had terminated before Roeder filed suit, thereby negating an essential element of Roeder's breach claim, i.e., a valid enforceable contract. Joy & Yoo's argument here is identical to its first summary judgment challenge discussed above. We understand this issue to point out that Joy & Yoo had preserved the no-valid-contract issue not only in terms of the summary judgment record, but

–23–

also in light of all the evidence at trial. Thus, if we were to sustain the issue, we could reverse and render judgment in favor of Joy & Yoo. However, no evidence submitted at trial leads us to come to a different conclusion: the fact that the parties agreement had terminated did not prevent Roeder from suing on a breach that occurred before the termination occurred.

We overrule Joy & Yoo's fourth issue.

## Cumulative Contract Damages

In its fifth issue, Joy & Yoo argues that the trial court erroneously awarded Roeder two overlapping measures of damages, effectively giving the plaintiff a double recovery. The proper measure of damages is a question of law; we review this issue de novo. *Signature Indus. Servs., LLC v. Int'l Paper Co.*, 638 S.W.3d 179, 187 (Tex. 2022).

The first question in the trial court's charge asked:

> What sum of money, if any, if paid now in cash, would fairly and reasonably compensate Roeder Holdings, LLC for its damages that resulted from Joy & Yoo Properties, LLC's failure to comply with the Development Agreement and Easement Agreement?
>
> Consider the elements of damages listed below and none other. Consider each element separately. Do not award any sum of money on any element if you have otherwise, under some other element, awarded a sum of money for the same loss. That is, do not compensate twice for the same loss, if any. Do not include interest on any amount of damages you find. Do not add any amount for interest on damages, if any.
>
> Answer separately in dollars and cents for damages, if any.
>
> (A) The reasonable and necessary amount to build and construct the Improvements, Preliminary Detention Pond, and Detention

Pond, less reimbursement costs under the Development Agreement, to (i) obtain governmental approvals of site plans for the Improvements, (ii) procure permits from the City of Burleson for the Improvements, (iii) professional engineering costs, (iv) obtain/submit construction bids, and obtain any other associated governmental requirements to construct the Improvements.

Answer:     $618,718.07

(B) The lost value to the Roeder Land without the completed Improvements and Detention Pond, thus, the difference between the value of the Roeder Land with the Improvements and Detention Pond less the current value of the Roeder Land without the Improvements and Detention Pond constructed.

Answer:     $480.000.00

Counsel for Joy & Yoo objected to this submission of damages as overlapping and "double-dipping." He argued that the measures were alternative recoveries and should not be submitted as cumulative ones. In addition, in Defendant's Response to Plaintiff's Motion to Enter Judgment, Joy & Yoo renewed its objection to the overlapping measures of damages and asked the trial court "[to] modify the requested judgment to eliminate the double-recovery of damages."

Joy & Yoo relies on well-settled law that outlines the two proper measures of damages for breach of a construction contract. The first measure, the remedial damages, assesses the cost to complete or to repair the subject of the contract; the second measure, the difference-in-value damages, assesses the difference between the value of the building as constructed and its value had it been constructed according to the contract. *McGinty v. Hennen*, 372 S.W.3d 625, 627 (Tex. 2012) (citing *Turner, Collie & Braden, Inc. v. Brookhollow, Inc.*, 642 S.W.2d 160, 164

–25–

(Tex. 1982)). Remedial damages are appropriate when the contractor has substantially performed; the difference-in-value measure applies when the contractor has not substantially complied with the contract terms. *Turner*, 642 S.W.2d at 164. The *Turner* court's analysis makes clear that the measures are, as Joy & Yoo has argued, alternative measures for a breach depending on the circumstances of the breach. *See id.* It is equally well settled that Texas law does not permit a double recovery for the same injury. *Parkway Co. v. Woodruff*, 901 S.W.2d 434, 441 (Tex. 1995).

Roeder argues that the jury's award does not amount to a double recovery. It contends that the award under Subsection A represents its direct damages for the breach, and the award under Subsection B is an award of consequential damages. Consequential damages result naturally, but not necessarily, from the defendant's wrongful act. *Stuart v. Bayless*, 964 S.W.2d 920, 921 (Tex. 1998). To be recoverable, such damages must be foreseeable to the parties at the time they contract and be directly traceable to—and caused by—the wrongful act. *Id.*

The Pattern Jury Charge drafters include a suggested submission for consequential damages in the form of lost profits. When a plaintiff seeks such damages, the jury should be told to consider:

> Lost profits that were a natural, probable, and foreseeable consequence of [the defendant's] failure to comply.

PJC 115.5. No such measure of damages was given to this jury. Instead, the jury was asked to assess the diminution in value of Roeder's property, which is a measure of

direct damages. *See Turner*, 642 S.W.2d at 164. The jury's response to a direct-damages question cannot be re-characterized as an award of consequential damages.[7]

Our conclusion based on the language of the jury charge is supported by Roeder's pleading and its evidence at trial. Roeder did not plead for consequential damages generally or for lost profits specifically. *See* Tex. R. Civ. P. 56 ("When items of special damage are claimed, they shall be specifically stated."); *see also AES Valves, LLC v. Kobi Int'l, Inc.*, No. 01-18-00081-CV, 2020 WL 1880781, at *7 (Tex. App.—Houston [1st Dist.] Apr. 16, 2020, pet. denied) (mem. op. on reh'g) ("As these are consequential or special damages, they must be specifically pled."). Instead, Roeder first sought specific performance of the agreements and then requested that the trial court:

> In the alternative, enter an award in favor of Plaintiff and against Defendant for all of Plaintiff's actual damages as requested herein, including without limitation, expectation damages, reliance damages, *loss of value*, and restitution damages, pre and post-judgment interest at the highest legal rates, all reasonable attorney's fees, [and] all taxable costs of court. (Emphasis added.)

Similarly, Mr. Roeder's trial testimony establishes that the jury's second finding was related to loss of value of his property. For example, he testified:

---

[7] We do not disagree with a number of Roeder's legal positions in this vein: in the proper case, contract law can support awards for both direct and consequential damages; the Development Agreement does not bar recovery of consequential damages; and lost profits can fall under the umbrella of consequential damages. But the issue or measure of consequential damages was not submitted to this jury.

Q. Now, in 2020, being a real estate developer with four decades of experience, having multiple projects currently ongoing, with all of the experience you have and being the owner of this land, back in 2020, without the improvements, how much do believe that your property was worth on a square-foot basis?

A. Without improvements, about roughly $12 a square foot.

Q. Okay. So the increased value with the improvements would have been how much?

A. Well, it's [$]480,000—it would be $8 a square foot difference— times $60,000 square feet would be 4—or $480,000.

* * *

Q. Now, you're asking this jury today for the lost value of your property, are you not?

A. Yes.

* * *

Q. And I think you testified earlier that had the improvements been done by my client, then, your property value would have gone up by how much again?

A. That's 480,000.

This testimony evaluating the difference in the value of Roeder's property (i.e., with and without the contractual improvements) at $480,000 establishes the basis of the jury's award for precisely that amount in Subsection B.

We conclude that the jury assessed—and the trial court erroneously awarded—amounts under alternative direct-damage theories; therefore, we must determine which amount should be included in a modified judgment. The Texas Supreme Court has directed that the remedial measure of damages applies whenever the breaching party has substantially complied with the terms of the contract and that

the difference-in-value measure applies when the contractor has not substantially complied with the contract terms. *Turner*, 642 S.W.2d at 164. The evidence is undisputed that Joy & Yoo had not substantially complied with the terms of the parties' agreements. Accordingly, the appropriate measure of direct damages for Joy & Yoo's breach is the difference-in-value measure of $480,000. *See id.* Because the court's damages award was incorrect, its calculation of interest based on that award was necessarily incorrect as well.

We sustain Joy & Yoo's fifth issue.

### CONCLUSION

We vacate the trial court's awards of direct damages and interest. In all other respects we affirm the trial court's judgment. We remand the case solely for entry of a modified judgment containing the correct amount of direct damages and the correspondingly correct calculation of interest.

220699f.p05

/Bill Pedersen, III//
BILL PEDERSEN, III
JUSTICE



## Court of Appeals
## Fifth District of Texas at Dallas

## JUDGMENT

JOY & YOO PROPERTIES, INC.,
Appellant

No. 05-22-00699-CV      V.

ROEDER HOLDINGS, LLC,
Appellee

On Appeal from the 160th Judicial
District Court, Dallas County, Texas
Trial Court Cause No. DC-20-06567.
Opinion delivered by Justice
Pedersen, III. Justices Garcia and
Kennedy participating.

In accordance with this Court's opinion of this date, the judgment of the trial court is **AFFIRMED** in part and **REVERSED** in part.

We **VACATE** the trial court's awards of direct damages and interest. In all other respects we **AFFIRM** the trial court's judgment. We **REMAND** the case solely for entry of a modified judgment containing the correct amount of direct damages and the correspondingly correct calculation of interest.

It is **ORDERED** that each party bear its own costs of this appeal.

Judgment entered this 28th day of November, 2023.