**CONDITIONALLY GRANTING WRIT and Opinion Filed April 11, 2024**



**In The**
**Court of Appeals**
**Fifth District of Texas at Dallas**

**No. 05-23-00593-CV**

**IN RE CHRISTOPHER TORRES, Relator**

**Original Proceeding from the 302nd Judicial District Court**
**Dallas County, Texas**
**Trial Court Cause No. DF-22-12902**

## OPINION

Before Justices Reichek, Smith, and Kennedy
Opinion by Justice Smith

On November 27, 2023, this Court denied Husband Christopher Torres's petition for writ of mandamus for failing to file a complete record, specifically the exhibits offered and admitted into evidence at the relevant hearing. Husband filed a motion for rehearing and supplemented the mandamus record with the missing exhibits, which he had requested from the court reporter twice before filing his petition in June 2023, and once before filing his motion to extend time to file his motion for rehearing in December 2023; he did not receive those exhibits until January 2024. We grant Husband's motion for rehearing, withdraw our November

27, 2023 memorandum opinion, vacate our order of that same date, and consider the merits of Husband's petition. This is now the opinion of the Court.

**Petition and Response**

In his petition for writ of mandamus, Husband asserts that the trial court clearly abused its discretion by refusing to enter a final judgment based on the parties' Mediated Settlement Agreement (MSA), which met the statutory formalities set forth in the family code, and by ordering the parties to reform the property division in the MSA. Specifically, Husband argues that Wife did not establish her defense of mutual or unilateral mistake if indeed mistake can be raised as a defense to an MSA. Husband also asserts that he does not have an adequate remedy by appeal because the trial court refused to render judgment.

Wife Erin Torres, real party in interest, responds that a trial court may order the parties to mediation as long as it retains jurisdiction over the case and, thus, the trial court did not abuse its discretion here by ordering the parties to mediate whether there was an asset that remained undivided. Wife claims that the trial court itself did not determine whether there was an undivided asset or a mistake in the MSA, and her response is silent as to whether an MSA can be set aside due to a mutual or unilateral mistake and, if so, whether she proved mistake in the trial court. Further, Wife contends that Husband does have an adequate remedy by appeal because the trial court did not rule on Husband's motion to enter judgment on the MSA and, thus, Husband's complaint is premature.

–2–

Because we agree that the trial court abused its discretion in failing to enter judgment on the binding MSA and further agree that Husband lacks an adequate remedy by appeal, we conditionally grant Husband's petition for writ of mandamus.

**Factual and Procedural Background**

Husband filed for divorce from Wife in August 2022, and Wife filed a counterpetition for divorce. No children resulted from the marriage. The parties exchanged sworn inventories and appraisements in which they identified all their claimed community and separate property. They attended mediation in December 2022, resolved their disputes with regard to the property division, and signed an MSA.

Wife subsequently remembered that she had inherited approximately $40,000 from her aunt in 2020 and deposited it into one of their Prosperity Bank accounts. The MSA reflects that the parties agreed such account would be divided as follows: $146,356 to Husband, with "all remaining" to Wife. Wife asked if Husband would agree "to change the decree to reflect that amount as her separate property." He declined and filed a motion to enter an agreed final decree of divorce based on the MSA.

In response, Wife sought to vacate the MSA on the grounds of mutual mistake. She contended that she discovered additional separate property inheritance funds that were not accounted for in the MSA and that the parties were mutually mistaken as to the full scope of her separate property. Alternatively, she requested the court

–3–

vacate the MSA on the ground of unilateral mistake because she did not intend to alienate her separate property.

At the hearing on Wife's motion to vacate, Wife testified that "there [was] some separate property I mistakenly forgot to mention during the mediation." She thought the account held community funds. Bank records showed that she deposited a check from her aunt's estate dated April 19, 2021, for $25,000 on April 23, 2021, and deposited a check dated November 17, 2021, for $14,148.48 on November 23, 2021. Wife agreed on cross-examination that she placed the funds in her bank account, not Husband's. She also agreed that she was the only one in control of the account when she had received and deposited the funds and when she had identified the account as community property on her sworn inventory and appraisement. As such, she agreed that Husband did not know what was in the account. Wife explained, "I was mostly focused on proving the funds that I . . . inherited from my mother's death. Those were much more significant." "I was so distracted with that that this mutual mistake caused me to forget about the other funds I inherited from my aunt." The court asked Wife, "What was the mistake that you did not know?" Wife responded, "The mistake was failing to mention the funds that I inherited from my aunt. I thought I had accounted for everything, and it was just something that was failed to be provided."

After the parties rested and closed, the trial court stated:

So with regard to the matter before the Court, on the Mediated Settlement Agreement, the Court is allowed to have the Mediated Settlement Agreement reformed. The Court will not divide property that is clearly separate property. That's contrary to the Texas Family Code and/or the just and right division of the estate. Based upon the content of the document and the testimony before the Court, the Court is going to instruct that the Mediated Settlement Agreement can be reformed to make any corrections with regard to the assets, which ostensibly were undisclosed at the time arguably as it relates to the inheritance from the aunt.

So that portion is granted. All I'm doing is allowing you to reform the Mediated Settlement Agreement. It is not set aside, but it is reformed with regard to just this particular area. . . .

I don't have you for closure on this. I need to get this to either a final trial and/or a prove-up date.

The trial court further stated that it was not entering a judgment but was simply allowing the parties to correct the agreement. On Wife's proposed order granting her motion to vacate the MSA, the trial court struck the word "vacate" and replaced it with "correct and reform," thereby entering an order granting Wife's motion to "correct and reform" the MSA. The trial court noted on its docket sheet that the "parties can return to mediator to reform/correct MSA" and that the case was reset to August 15, 2023.

Husband filed his petition for writ of mandamus on June 13, 2023, and sought an emergency stay, which this Court granted as to the order to correct and reform the MSA.

**Mandamus Relief**

To be entitled to mandamus relief, a relator must show that the trial court clearly abused its discretion and that relator has no adequate remedy by appeal. *In re Prudential Ins. Co. of Am.*, 148 S.W.3d 124, 135–36 (Tex. 2004) (orig. proceeding); *Walker v. Packer*, 827 S.W.2d 833, 839–40 (Tex. 1992) (orig. proceeding). A trial court abuses its discretion when it acts in an unreasonable and arbitrary manner or without reference to guiding rules and principles. *In re Colonial Pipeline Co.*, 968 S.W.2d 938, 941 (Tex. 1998) (orig. proceeding) (per curiam).

**Entitlement to Judgment on an MSA**

Under the Texas Family Code, a party to a suit for dissolution of marriage is entitled to judgment on an MSA if it satisfies section 6.602's enumerated requirements. TEX. FAM. CODE ANN. § 6.602(c); *see also Highsmith v. Highsmith*, 587 S.W.3d 771, 773 (Tex. 2019) (per curiam). The parties do not dispute that the MSA at issue here satisfied such requirements. *See* TEX. FAM. CODE § 6.602(b).

"It is well-settled that an MSA that meets section 6.602's statutory formalities 'is binding on the parties and requires the rendition of a divorce decree that adopts the parties' agreement.'" *Highsmith*, 587 S.W.3d at 775 (quoting *Milner v. Milner*, 361 S.W.3d 615, 618 (Tex. 2012)). "Unlike with other settlement agreements in the family law context, the trial court is not required to determine if the agreed property division is 'just and right' before approving an MSA that satisfies the statutory

requirements." *Id.* "In other words, a statutorily compliant MSA is binding on both the parties and the trial court, subject to a few narrow exceptions." *Id.*

Wife asserts in her mandamus response that the trial court did not determine whether there was a mistake in the MSA or whether an undivided asset remained but, instead, ordered the parties to mediation to determine whether there was an asset that remained undivided. We disagree with Wife's assertion.

At the close of the hearing, the trial court stated, "The Court will not divide property that is clearly separate property. That's contrary to the Texas Family Code and/or the just and right division of the estate." As explained by the supreme court, the trial court was not permitted to determine if the agreed property division was "just and right" or generally complied with the laws regarding the division of marital property. *See id.* Therefore, the trial court clearly abused its discretion by evaluating the merits of the property division agreed upon by the parties.

Although Wife's contention now is that the trial court did not determine whether there was a mutual or unilateral mistake, Wife's basis for setting aside the MSA in the trial court was that she or she and Husband mistakenly categorized her separate property as community property. Thus, we next turn to whether the trial court could have declined to enter judgment on the MSA on such basis.

Mutual or unilateral mistake has not been recognized by the supreme court as a ground on which to void an MSA, but this Court has expressly rejected unilateral mistake as a basis for setting aside an MSA. *See In re B.H.*, No. 05-19-00324-CV,

2019 WL 4254063, at *4 (Tex. App.—Dallas Sept. 9, 2019, no pet.) (mem. op.) ("Father's unilateral misunderstanding or mistake about the MSA's terms or enforceability is not grounds for setting aside the MSA."); *see also In re C.H.C.*, 396 S.W.3d 33, 46 (Tex. App.—Dallas 2013, no pet.) ("A unilateral mistake does not provide grounds for relief even though it results in inequity to one of the parties."). Therefore, to the extent the trial court ordered the MSA to be reformed on the basis of Wife's alleged unilateral mistake, it was an abuse of discretion.

As to the defense of mutual mistake, the Corpus Christi–Edinburg Court has explained that, because it found no binding authority applying the contract doctrine of mistake to section 6.602 agreements, the trial court did not abuse its discretion in rejecting wife's defense of mistake argument. *See Loehr v. Loehr*, No. 13-08-00380-CV, 2009 WL 2645025, at *4 (Tex. App.—Corpus Christi–Edinburg Aug. 28, 2009, no pet.) (mem. op.). Although this Court has addressed whether the party asserting mutual mistake met his or her burden to establish such defense to an MSA, this Court has not expressly decided that the defense of mutual mistake applies to a section 6.602 MSA. *See, e.g., Butler v. Butler*, No. 05-02-01631-CV, 2003 WL 21983218, at *1–2 (Tex. App.—Dallas Aug. 21, 2003, no pet.) (mem. op.) (concluding trial court did not err in refusing to reform the MSA to reflect a lower payment from husband to wife or in rendering the divorce decree based on the binding MSA, which met the procedural requisites of section 6.602, because even if the parties overestimated the value of their property during mediation, nothing in the MSA

indicated that the agreed payment to wife was based on a sixty–forty division of their community property, as alleged by husband on appeal); *see also In re C.H.C.*, 396 S.W.3d at 44–47 (concluding mother did not show MSA under section 153.0071, which similarly governs MSAs in suits affecting the parent–child relationship, was the product of mutual mistake).

In *Milner v. Milner*, the supreme court explained that "once signed, an MSA cannot be revoked like other settlement agreements." 361 S.W.3d at 618; *see also Butler*, 2003 WL 21983218, at *1 ("Section 6.602 provides a procedural shortcut for the enforcement of MSAs in divorce cases, eliminating the need for a separate suit to enforce the agreement even when one party withdraws his consent from the MSA."). Although the supreme court determined that a provision of the MSA was ambiguous and that the ambiguity had to be resolved before an agreed judgment could be rendered, the court did not "agree that the MSA should be set aside merely because the parties interpret their agreement differently." *Milner*, 361 S.W.3d at 622–23; *see also In re Lauriette*, No. 05-15-00518-CV, 2015 WL 4967233, at *3–5 (Tex. App.—Dallas Aug. 20, 2015, orig. proceeding) (mem. op.) (concluding trial court abused its discretion in setting aside MSA because of alleged ambiguity and explaining "mandamus relief will enable the parties to proceed immediately to determining whether the agreement is ambiguous and permit the trial court to resolve any ambiguity and enter judgment in accordance with the agreement").

Whether a contract is ambiguous is a question of law that involves interpreting and construing the agreement *as written*. *See Milner*, 361 S.W.3d at 619. But the defense of mutual mistake applies "when the parties to an agreement have a common intention, but the written contract does not reflect the intention of the parties due to a mutual mistake." *Smith-Gilbard v. Perry*, 332 S.W.3d 709, 713 (Tex. App.—Dallas 2011, no pet.). Thus, it is an argument that the agreement reduced to writing is not the actual agreement and should be modified. Such defense cannot apply to an MSA if we are to give full effect to the language in section 6.602(c), which provides that "a party is *entitled* to judgment on the mediated settlement agreement *notwithstanding* Rule 11, Texas Rules of Civil Procedure, or another rule of law" if the MSA meets the statutory requirements, including an agreement that the MSA cannot be revoked. *See* TEX. FAM. CODE § 6.602(b)–(c) (emphasis added). The trial court does not have authority to modify the MSA, order the parties to modify the MSA, or enter a decree that varies from the terms of the MSA. *See In re Marriage of Joyner*, 196 S.W.3d 883, 890–91 (Tex. App.—Texarkana 2006, pet. denied). Allowing parties to claim mutual mistake as a defense would eviscerate the immediately binding and enforceable nature of a section 6.602 MSA especially when, like here, each party has specifically agreed in the MSA that "he or she has reviewed this written agreement with counsel, if any, before signing it, and is satisfied that it does contain the agreement made in mediation."

In *Cayan v. Cayan*, the Fourteenth Court of Appeals concluded that "the language of section 6.602 reflects that when the Legislature enacted that section, it definitely and deliberately created a procedural shortcut for enforcement of mediated settlement agreements in divorce cases." 38 S.W.3d 161, 166 (Tex. App.—Houston [14th Dist.] 2000, pet. denied). The court further explained:

> If a party fails to exercise diligence in investigating facts or law or otherwise enters into a section 6.602 agreement inadvisedly, he will not be rewarded for doing so with a reprieve from the agreement. Conversely, if a party is wrongfully induced to enter into a section 6.602 agreement, he has the same recourse as one who discovered such a circumstance after judgment was entered on a non-section 6.602 agreement.

*Id.* at 167. We agree with the Fourteenth Court's rationale. An MSA entered into under section 6.602 is "more binding than a basic written contract; nothing either party could have done would have modified or voided the Agreement once everyone had signed it." *In re Joyner*, 196 S.W.3d at 889 (citing *Cayan*, 38 S.W.3d at 165–66).[1] Parties are of course "free to enter mediated settlement agreements that do not fall within section 6.602 and, in fact, must take affirmative steps to qualify for section 6.602 treatment." *Cayan*, 38 S.W.3d at 166. Therefore, when a party does take affirmative steps to enter into a section 6.602 binding and nonrevocable MSA,

---

[1] Our opinion should not be read to foreclose arguments that a section 6.602 MSA is unenforceable because it is illegal or was procured by fraud, duress, coercion, or other dishonest means. *See, e.g.*, *Boyd v. Boyd*, 67 S.W.3d 398, 403 (Tex. App.—Fort Worth 2002, no pet.). Today, we reach only the narrow decision that the defense of mutual mistake cannot be used to set aside a statutorily compliant section 6.602 MSA.

we conclude that the defense of mutual mistake is not available to later set aside the MSA.

Even if the defense of mutual mistake were a basis on which a trial court could set aside an otherwise statutorily compliant MSA or order the parties to reform certain provisions of an MSA, we conclude that Wife failed to meet her burden to establish the defense of mutual mistake here. Generally, an agreement may be set aside where the parties contracted under a misconception or ignorance of a material fact. *In re C.H.C.*, 396 S.W.3d at 46. A mutual mistake "occurs when the parties to an agreement have a common intention, but the written contract does not reflect the intention of the parties due to a mutual mistake." *Smith-Gilbard*, 332 S.W.3d at 713. Thus, a party seeking relief from a mutual mistake must prove what the true agreement was, establish that the terms or provisions in the writing differ from the true agreement, and show that the different terms were placed in the writing by mutual mistake. *Id.* at 714.

Wife presented no evidence of what the parties' "true" agreement was and how it differed from the MSA. Instead, Wife's argument in the trial court was that she and Husband mistakenly labeled the account as community property instead of separate property in their sworn inventories and appraisements and that, had she remembered the inheritance or had the account been properly characterized, she and Husband would have reached a different agreement. But the defense of mutual mistake requires a showing that she and Husband actually did reach a different

agreement than that shown in the MSA and that the MSA, because of a mutual mistake, does not represent the actual agreement between the parties. *See id.* at 713–14. Wife failed to establish such here as there is no evidence the parties reached a different agreement as to her account in which she deposited the inheritance she received from her aunt. *See, e.g.*, *Mullins v. Mullins*, 202 S.W.3d 869, 875–77 (Tex. App.—Dallas 2006, pet. denied) (implicitly rejecting wife's argument that division of her pre-marriage retirement benefits was a mutual mistake where wife "listed her retirement benefits as community property in her sworn appraisal and did not claim a separate property interest in her retirement benefits until after the mediated settlement agreement was executed"). Additionally, the parties' sworn inventories and appraisements were not identical in all respects, and there is no evidence as to how the parties agreed to split their community and separate property after exchanging their inventories, apart from the terms of the MSA itself. Furthermore, parties are free to divide their separate property by agreement. *Cayan*, 38 S.W.3d at 166.

Moreover, the MSA was detailed and contained the following representations in which the parties acknowledged they did not have complete information but were satisfied that the information available was sufficient to make an informed decision regarding the division of the marital estate and that the MSA was the agreement reached in mediation:

- the parties "have had an opportunity to obtain a substantially full and accurate disclosure from the other party of all assets and liabilities, whether claimed to be community or separate in character, including the approximate current balance in all financial accounts addressed in this agreement";

- they have been "advised by their respective attorneys that additional discovery would be necessary to obtain a complete picture of the estates of the parties," and that "they are satisfied with the disclosure as made at the time of this agreement, and each party waives any further disclosure by signing this agreement";

- "he or she has reviewed this written agreement with counsel, if any, before signing it, and is satisfied that it does contain the agreement made in mediation";

- "each is signing this agreement only after having read this entire document carefully, word-for-word";

- "*each party has been advised NOT to sign this agreement unless each has read it fully, understands it completely, and is willing to be immediately bound by all of its terms, provisions, and conditions*" (emphasis in original); and

- "**THIS AGREEMENT SHALL BE BINDING ON THE PARTIES AND SHALL NOT BE SUBJECT TO REVOCATION. THE PARTIES SHALL BE ENTITLED TO A JUDGMENT ON THE MEDIATED SETTLEMENT AGREEMENT NOTWITHSTANDING RULE 11, TEXAS RULES OF CIVIL PROCEDURE, OR ANY OTHER RULE OF LAW**" (emphasis in original).

The agreement also expressly stated that "[t]he parties agree that the values used to create the attached spreadsheet were sufficient to make an informed decision regarding the division of the estate today."

Therefore, to the extent the trial court relied on Wife's argument that there was a mutual mistake and that the MSA could be reformed, the trial court abused its

–14–

discretion. Here, the trial court was required to enter judgment on the binding MSA, and it erred when it declined to do so and ordered the parties back to mediation.

## No Adequate Remedy by Appeal

We next turn to whether Husband has an adequate remedy by appeal. We conclude that he does not.

First, we reject Wife's argument that Husband's complaint is premature because the trial court did not rule on Husband's motion to enter judgment on the MSA and did not technically set it aside. By ordering the parties to reform any portion of the MSA, the trial court necessarily refused to enter judgment on the MSA as written and set aside the written agreement that was binding at its signing.

Second, the supreme court has noted that "[m]andamus relief is available to remedy a trial court's erroneous refusal to enter judgment on an MSA." *In re Lee*, 411 S.W.3d 445, 450 n.7 (Tex. 2013) (orig. proceeding). Citing *In re Lee* and other precedents, this Court previously explained:

> The trial court's error of setting aside the mediated settlement agreement could be corrected on appeal, but only after the parties had litigated or reached a new settlement concerning the issues in this proceeding. Waiting until the appeal to correct this error would deprive the parties of one of the benefits of a mediated settlement agreement under the family code, an end to litigation through the immediate enforceability of the agreement. A failure to enforce a mediated settlement agreement deprives the party seeking to enforce the agreement of one of the benefits of a mediated settlement agreement because it forces the party to expend further time and resources litigating a suit that was settled.
>
> The supreme court has determined that mandamus relief is available to remedy a trial court's erroneous refusal to enter judgment on a mediated

settlement agreement because the parties will have lost much of the settlement's benefit if they are required to expend time and resources appealing the error. Not correcting the trial court's error of setting aside the agreement would similarly deprive the parties of the benefits of a mediated settlement agreement.

*In re Lauriette*, 2015 WL 4967233, at \*4–5 (internal citations and footnote omitted).

Therefore, as explained in *In re Lauriette*, Husband lacks an adequate appellate remedy. *See id.*

## Conclusion

Husband is entitled to mandamus relief. The trial court clearly abused its discretion by declining to enter judgment on the MSA and ordering the parties back to mediation. Additionally, Husband has no adequate remedy by appeal. We, therefore, conditionally grant the writ and direct the trial court to vacate its order granting Wife's motion to correct and reform the MSA and further direct the trial court to enter judgment on the MSA. A writ will issue only if the trial court fails to comply. The stay imposed in our July 28, 2023 order is lifted.

/Craig Smith/
_____
CRAIG SMITH
JUSTICE

230593F.P05

–16–